■ Stevi Brooks, Respondent, v Harley I. Lewin et al., Appellants. [800 NYS2d 695]—

Order, Supreme Court, New York County (Leland DeGrasse, J.), entered May 20, 2004, which denied defendants' motion for summary judgment, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

This is an action for legal malpractice. Plaintiff is a designer of exercise clothing, and the president of Beverly Hills Design Studio (BHDS), which marketed her activewear. In April 1987, BHDS entered into a confidentiality agreement with Morris Sales, Inc. (MSI), a company that was already manufacturing and selling plaintiff's clothing. The agreement contemplated BHDS's disclosure to MSI of its confidential and proprietary information for use in the production of pieces designed and sold by BHDS. The agreement prohibited MSI from disclosing any of BHDS's confidential information to anyone without BHDS's prior written consent.

The business relationship of BHDS and MSI was contentious, and there were disputes over payments, late deliveries, labor and freight charges, missing fabric, and problems with the quality of the finished product. The business relationship between BHDS and MSI ended in January 1988.

In subsequent years, BHDS replaced MSI with other manufacturers. BHDS had its best year between April 1, 1988 and March 31, 1989, after its relationship with MSI was terminated. During this time, the company increased its net sales from $2,629,255 to $4,015,740.95 and its gross profits from $770,074 to $1,258,794.56. In the following fiscal year, BHDS was awarded a large contract to sell its garments to J.C. Penney. Between April 1, 1989 and March 30, 1990, BHDS had net sales of $3,501,313 and gross profits of $1,052,446. However, BHDS's business declined dramatically after March of 1990 due to production problems, and in 1991, the company filed for bankruptcy.

Plaintiff asserts that while working together, MSI and its principal, James Morris, actively solicited BHDS's retail accounts and wholesale business resources by improperly using information protected by the confidentiality agreement. In April 1988, plaintiff and BHDS retained defendant law firm to represent them in connection with their claims against MSI and others. On August 24, 1988, defendant filed an action in federal court on behalf of plaintiff and BHDS, asserting claims against James Morris, and various companies he owned and/or controlled and several other of BHDS's independent competitors (*see Beverly Hills Design Studio [N.Y.] Inc. v Morris*, 126 FRD 33 [SD NY 1989]).

Plaintiff's federal complaint alleged copyright and trademark infringement, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and various pendent state law claims (*id.* at 35). All of the claims except the RICO and certain state law claims were dismissed (*see Beverly Hills Design Studio [N.Y.] Inc. v Morris*, 1989 WL 85867, 1989 US Dist LEXIS 8507 [SD NY 1989]; *Beverly Hills Design Studio [N.Y.] Inc. v Morris*, 1990 WL 120645, 1990 US Dist LEXIS 6099 [SD NY 1990]).

In June 1990, plaintiff also made claims under her "all risk" property and liability insurance policy with Zurich-American Insurance Group (Zurich). When Zurich declined coverage, plaintiff brought an action for breach of contract. As relevant to this appeal, plaintiff asserted that the insurer's dilatoriness and conduct effectively cost plaintiff her business. This Court found that there were issues of fact as to whether the insurer properly disclaimed coverage based upon a policy exclusion (*see Brooks v Zurich-American Ins. Group*, 300 AD2d 176 [2002]).

Plaintiff, pro se, brought this action in 1993, asserting that defendant law firm committed malpractice. Defendants moved for summary judgment. This was denied because defendant failed to rebut various of plaintiff's allegations. That court said that defendants "repeatedly submitted defective pleadings, ignored meritorious state law claims, failed to take interim action to deter the harm caused plaintiff by the Morris defendants' ongoing activities, and then, when her money was depleted, threatened plaintiff to deter her from opposing their motion to withdraw."

In December 2002, plaintiff, now represented by counsel, filed an amended complaint. She alleged, among other things, that defendants committed malpractice by failing to move in the federal action for a preliminary injunction based upon the confidentiality agreement. Plaintiff claimed that MSI was using information protected under that agreement to manufacture "knock-off" garments and to compete with her in the marketplace. Plaintiff asserted that as a result of MSI's violation of the confidentiality agreement and the law firm's alleged negligence in failing to move for an injunction to stop it, BHDS was forced out of business. Plaintiff claimed that she lost business from two of her biggest clients, Target and J.C. Penney, and that she was forced into bankruptcy as a result of MSI's violations of the confidentiality agreement and defendant law firm's failure to seek a preliminary injunction to preclude MSI's wrongful acts.

Defendant moved to dismiss the amended complaint. The IAS court granted the motion to the extent of dismissing the claims for breach of fiduciary duty and the claim for punitive damages.

Defendant then brought the subject motion for summary judgment, on the ground that plaintiff had not established that its alleged malpractice was a proximate cause of plaintiff's losses. The IAS court denied defendant's motion, concluding that the claim for malpractice was "not precluded by the fact that [plaintiff] sustained losses due to other factors." We reverse.

An action for legal malpractice requires proof of three elements: (1) that the attorney was negligent; (2) that such negligence was a proximate cause of plaintiff's losses; and (3) proof of actual damages (*Reibman v Senie*, 302 AD2d 290, 290 [2003]). In order to establish proximate cause, a plaintiff must demonstrate that but for the attorney's negligence, she would have prevailed in the underlying matter or would not have sustained any ascertainable damages (*id.* at 290-291). The failure to establish proximate cause mandates the dismissal of a legal malpractice action, regardless of the attorney's negligence (*id.* at 291; *see e.g. Senise v Mackasek*, 227 AD2d 184, 185 [1996]; *Stroock & Stroock & Lavan v Beltramini*, 157 AD2d 590, 591 [1990]).

Where the record in a professional malpractice case demonstrates that an intervening cause was responsible for the injury, summary judgment will be granted to the defendant (*see D.D. Hamilton Textiles v Estate of Mate*, 269 AD2d 214, 215 [2000] [malpractice claim against accountant dismissed where sole proximate cause of injury was plaintiff's severe financial distress]; *Phillips-Smith Specialty Retail Group II, L.P. v Parker Chapin Flattau & Klimpl, L.L.P.*, 265 AD2d 208 [1999], *lv denied* 94 NY2d 759 [2000] [malpractice claim dismissed where connection between plaintiff's injuries and alleged malpractice was purely speculative]).

Here, plaintiff admits that BHDS lost Target, one of its biggest clients, before defendants were retained, and that it lost business from J.C. Penney because of manufacturing and delivery problems unrelated to MSI's alleged breach of the confidentiality agreement. The record also reveals that BHDS's sales and profits grew significantly the first year after it terminated its business with MSI. It also shows that plaintiff did not lose its account with J.C. Penney until it had production problems in late 1989, after it had terminated its relationship with MSI.

Plaintiff nonetheless asserts that a number of events which occurred after she severed her relationship with MSI could have been prevented if the law firm made the motion for the injunction. However, speculation on future events is insufficient to establish that the defendant lawyer's malpractice, if any, was a

proximate cause of any such loss (*see D.D. Hamilton Textiles v Estate of Mate, supra*; *Phillips-Smith v Parker Chapin, supra*; *Sherwood Group v Dornbush, Mensch, Mandelstam & Silverman*, 191 AD2d 292, 294 [1993] [hypothetical course of events on which any determination of damages would have to be based constitutes such a chain of "gross speculations on future events" as to be incapable of legal proof]; *John P. Tilden, Ltd. v Profeta & Eisenstein*, 236 AD2d 292, 293 [1997] [legal malpractice action based on theory of what Court of Appeals would have done had plaintiff's attorney timely served motion for leave to appeal was " 'too speculative' to raise a genuine issue of fact with respect to proximate cause"]).

There is nothing in the record upon which to base a determination that but for defendants' failure to move for an injunction, plaintiff would not have been forced out of business. Accordingly, we reverse the order appealed, grant defendants' motion, and dismiss the complaint. Concur—Mazzarelli, J.P., Marlow, Sullivan, Ellerin and Catterson, JJ. [*See* 4 Misc 3d 1006(A), 2004 NY Slip Op 50732(U) 2004.]