**DIMENSIONAL MUSIC PUBLISHING, LLC., Plaintiff,**

**v.**

**Antoinette KERSEY, as Executrix of the ESTATE OF Tyrone G. KERSEY, Kisha Kersey, and Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Defendants.**

**Civil Action No. 05–6437.**

United States District Court, E.D. Pennsylvania.

Aug. 25, 2006.

---

Joshua D.K. Snyder, Michael J. Boni, Kohn, Swift & Graf, P.C., Philadelphia, PA, Marc J. Goldstein, Hodgson Russ LLP, New York City, for Plaintiff.

Camille M. Miller, Brian J. Urban, Melanie A. Miller, Cozen & O'Connor, P.C., Wendy Beetlestone, William T. Hangley, Shanon S. Levin, Hangley Aronchick Segal & Pudlin, Philadelphia, PA, for Defendants.

### *MEMORANDUM*

DUBOIS, District Judge.

## I. INTRODUCTION

This lawsuit involves the rights to the song "Disco Inferno" (hereinafter "the Composition"). Plaintiff, a limited liability company engaged in music publishing, filed suit seeking a declaratory judgment that, under the provisions of an assignment made in 1977, it is the exclusive owner of all rights in the Composition, including the Composition's renewal rights. Compl. ¶ 3. In the event that the Court

finds that plaintiff is not the exclusive owner of the renewal rights in the Composition, plaintiff alleges legal malpractice by defendant Paul, Weiss, Rifkind, Wharton & Garrison, LLP (hereinafter "Paul Weiss"), which represented plaintiff in acquiring the Composition.[1] *Id.* ¶ 5. Defendant Paul Weiss has filed a Motion to Dismiss or Stay This Action. For the reasons below, the Court denies defendant's Motion to Dismiss, but grants its Motion to Stay, subject to the requirement that Paul Weiss participate in all discovery in plaintiff's case against the Kersey defendants which relates to its potential malpractice liability.

## II. BACKGROUND

### A. The Composition At Issue

The following facts are taken from plaintiff's Complaint as well as affidavits submitted by both parties.[2]

The Composition was written by two Philadelphia songwriters, Tyrone Kersey and Leroy Green ("Green"). *Id.* On January 24, 1977, Kersey and Green entered into an Agreement of Sale (hereinafter

"the 1977 Agreement") with Golden Fleece Music ("Golden Fleece") and Six Strings Music ("Six Strings") to sell the Composition's "title, words and music ... and the right to secure copyright therein throughout the entire world, and to have and to hold the said copyright and all rights of whatsoever nature thereunder existing, now known or hereafter to become known." *Id.* ¶ 20. Golden Fleece and Six Strings then assigned all rights in the Composition to Six Strings on March 2, 1978. *Id.* ¶ 26. More than twenty years later, on February 16, 2001, Six Strings sold all of its rights, title and interest in the Composition, expressly including its renewal rights, to DreamWorks Music Publishing LLC ("DreamWorks"). *Id.* ¶ 27. Finally, on November 5, 2004, DreamWorks sold most of its music publishing catalog, including the Composition, to plaintiff for the sum of $ 42.8 million.[3] *Id.* ¶¶ 43, 53.

In August 2005, after plaintiff acquired the DreamWorks catalog, defendant Steinberg Business and Music Advisory Services sent a letter to plaintiff on behalf of the Kersey Estate ("the Estate"),[4] assert-

---

1. As discussed in section II(C) *infra,* the exact nature of the relationship between plaintiff and defendant Paul Weiss is contested.

2. Paul Weiss has moved to dismiss plaintiff's Complaint based both on lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and failure to state a claim under Fed.R.Civ.P. 12(b)(6). In determining a motion to dismiss under Rule 12(b)(6), a court may only consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and concededly authentic documents relied on by the plaintiff. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). However, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court may look beyond the allegations in the complaint and consider affidavits and other relevant evidence submitted by the parties. *Berardi v. Swanson Mem. Lodge No. 48 of the Fraternal*

*Order of Police,* 920 F.2d 198, 200 (3d Cir. 1990) (Alito, J.); *George v. Northwest Airlines, Inc.,* 2004 WL 414062, at *2 (E.D.Pa. Feb. 27, 2004). Therefore, the Court will include facts not stated in plaintiff's Complaint—facts from affidavits submitted by both parties—in this background section. However, as discussed in Section III(C) *infra,* the Court will not consider these additional facts in deciding Paul Weiss's motion to dismiss for failure to state a claim.

3. The Composition was the fourth-highest income-earning song in the DreamWorks catalog. Compl. ¶ 2.

4. Kersey died on January 25, 2005. Compl. ¶ 56. While this event was significant in plaintiff's case against the Kersey defendants, it is not relevant to the claim against Paul Weiss.

ing that the 1977 Agreement did not transfer Kersey's renewal rights in the Composition to Six Strings and Golden Fleece, and that the Estate owned Kersey's 50% interest in the renewal rights of the Composition.[5] *Id.* ¶¶ 3, 58. Plaintiff then filed this Complaint on December 15, 2005 against Antoinette Kersey, Kersey's sister and executrix of his estate; Kisha Kersey, Kersey's daughter and heir; David J. Steinberg and Steinberg Business and Music Advisory Services, Inc. (hereinafter "the Steinberg defendants"); and Paul Weiss. The Complaint sought a declaratory judgment against Antoinette and Kisha Kersey (hereinafter "the Kersey defendants") and the Steinberg defendants that plaintiff is the exclusive owner of all rights, including the renewal rights, in the Composition.[6] Pleading in the alternative, plaintiff asserts a claim of legal malpractice against defendant Paul Weiss on the ground that the firm negligently represented plaintiff in the DreamWorks transaction.

## B. Procedural History

Shortly after filing the Complaint, plaintiff filed a motion for partial summary judgment against the Kersey defendants on the legal question of the vesting of the Composition's renewal rights. On June 23, 2006, the Court issued a Memorandum and Order granting plaintiff's motion for partial summary judgment on this limited question. *Dimensional Music Publ'g, LLC v. Kersey,* 435 F.Supp.2d 452 (E.D.Pa.2006). The Court ruled that, assuming that Kersey validly transferred his renewal rights to plaintiff's predecessors in interest through the 1977 Agreement, the renewal rights to the Composition legally vested in plaintiff because plaintiff filed the application for renewal rights on January 5, 2005, when Kersey was still alive. *Id.* at 462.[7] Plaintiff's remaining claim against the Kersey defendants—the claim arising out of the transfer of renewal rights to the Composition in the 1977 Agreement—is ongoing.

Should plaintiff lose its claim against the Kersey defendants, plaintiff named Paul Weiss as a defendant, on the ground that if it did not obtain "all right, title and interest in the Composition, particularly the 50% interest in the Renewal Rights that originally were owned by Tyrone G. Kersey ... this failure was the direct and proximate result of professional negligence—legal malpractice—by the co-defendant [Paul Weiss]." Compl. ¶ 5. This negligence included, but was not limited

---

**5.** Because the Composition was jointly written by Kersey and Green, each had a 50% ownership interest in the copyright and the renewal rights to the copyright. Like Kersey, Green purportedly transferred his interest in the Composition's renewal rights to Golden Fleece and Six Strings in the 1977 Agreement. Despite this alleged transfer of the renewal rights through the 1977 Agreement, Green entered into an agreement with DreamWorks on February 16, 2001 (the "Green February 2001 Agreement") to transfer his and his heirs' interest in the renewal rights to the Composition to DreamWorks. Compl. ¶ 29. Notwithstanding this Green February 2001 Agreement to transfer, Green acknowledged in both that agreement and in a letter sent several weeks later that he and Kersey both intended to transfer their renewal rights in the Composition through the 1977 Agreement. *Id.* ¶¶ 29–31.

Regardless of when Green's renewal rights were transferred, they were acquired by plaintiff when plaintiff purchased the DreamWorks catalog. It is uncontested that plaintiff owns a 50% interest in the Composition.

**6.** The Steinberg defendants have since been dismissed by Order dated April 4, 2006 pursuant to a stipulation between plaintiff and those defendants.

**7.** Defendants Antoinette and Kisha Kersey filed a motion for reconsideration of the Court's Memorandum and Order; this motion was denied on July 12, 2006.

to, defendant's "failure to ask for and obtain, and/or its failure to realize the significance of and report on" the 1977 Agreement and the Green February 2001 Agreement (see footnote 5 *infra* ).[8] *Id.* ¶ 75. As a "proximate and direct" result of defendant's negligence, plaintiff alleges it sustained damages including (but not limited to) overpayment for the DreamWorks catalog, lost profits from exploitation of 50% of the Composition's renewal rights, attorneys' fees paid to defendant, costs expended in evaluating the Kersey estate claim for copyright, and the loss of any profit from any subsequent re-sale of the Composition.[9] *Id.* ¶ 76.

### C. Plaintiff's Relationship With Defendant Paul Weiss

The exact relationship between plaintiff and defendant Paul Weiss is contested. The Court will outline each party's explanation of the relationship.

#### 1. *Plaintiff's Explanation*

According to the Complaint, "certain entities," with financing "proposed to be provided by plaintiff," sought to acquire DreamWorks's music publishing assets in July 2004. Compl. ¶ 40. These entities "engaged Paul Weiss to represent them in connection with the proposed acquisition." *Id.* ¶ 41. The scope of this engagement included a "legal due diligence investigation of the copyright ownership rights" of

the compositions in the DreamWorks catalog. *Id.* During the due diligence process, the proposed purchasers of the DreamWorks catalog determined that they could not finance the transaction. *Id.* ¶ 42. In August 2004, plaintiff was "again" invited to become the purchaser of the catalog. *Id.* To "induce" Paul Weiss to complete the due diligence work, plaintiff agreed to pay its outstanding legal fees for the work which had already been completed. *Id.*

As part of its due diligence work, defendant was instructed to order chain-of-title reports from DreamWorks for 27 specific works, including the Composition.[10] *Id.* ¶ 43. According to plaintiff, Paul Weiss reported that all copyright interests in the Composition, including the renewal rights, had been transferred to DreamWorks, and that plaintiff, as purchaser, would acquire exclusive rights in the Composition through at least 2033.[11] *Id.* ¶ 44.

#### 2. *Defendant's Explanation*

As explained by Paul Weiss,[12] its involvement in the DreamWorks deal began when the firm was retained in June 2004 to represent a company called Soundbank, which sought to acquire the music publishing catalog of DreamWorks. Def. Memo., Harper Decl. ¶ 6. Soundbank retained Paul Weiss at the request of Bridgepoint, a U.K. private equity fund which financed Soundbank's bid. *Id.* Paul Weiss spent the next month conducting due diligence

---

**8.** According to plaintiff, each of these documents should have caused defendant to raise "serious questions" about whether the 1977 Agreement effectively transferred the renewal rights in the Composition. Compl. ¶ 75.

**9.** Plaintiff estimates that these damages exceed $ 2,000,000. Compl. ¶ 77.

**10.** Plaintiff explains that the Composition was among 141 works singled out for chain-of-title review based on its high revenues. *Id.* ¶ 43.

**11.** This acquisition was subject only to the proviso that Green and Kersey "survive renewal." *Id.* ¶ 44.

**12.** Paul Weiss sets forth these facts in a declaration by Gerard E. Harper, a partner and member of the management committee at Paul Weiss. Harper did not personally participate in the DreamWorks deal; his familiarity with the facts is based on his position within the firm. Def. Memo., Harper Decl. ¶ 1.

on the DreamWorks catalog and drafting a proposed asset purchase agreement. *Id.* ¶ 7. According to Paul Weiss, the asset purchase agreement is key in any music publishing deal, because it contains representations and warranties that the seller actually owns the rights to the music that the seller is claiming to sell. *Id.* ¶ 8. At the time Paul Weiss was retained, DreamWorks's counsel, Grubman & Indursky, had already drafted an asset purchase agreement. *Id.* ¶ 9. In this draft agreement, DreamWorks represented that it owned only whatever interest was set forth in the thousands of contracts comprising the music catalog; it did not represent *what* that interest actually was.[13] *Id.* In contrast, the asset purchase agreement drafted by Paul Weiss contained unconditional representations and warranties that the seller owned the copyrights interests set forth in an attached (but as-yet-unprepared) schedule. *Id.* ¶ 10. The final asset purchase agreement used in the DreamWorks catalog transaction, however, was similar to the original agreement drafted by Grubman & Indursky, with no representations as to what interests in the works plaintiff was actually acquiring.[14] *Id.* ¶ 18.

In early July 2004, Paul Weiss learned that Bridgepoint, the fund backing Southbank's bid, had withdrawn its support.

Because Bridgepoint had been paying Paul Weiss's fees, Paul Weiss stopped its work on the deal. *Id.* ¶ 11. New funding was acquired, however, from JDS Capital ("JDS"). *Id.* Paul Weiss briefly resumed its work on the deal, but stopped a few weeks later, when JDS decided that Paul Weiss's's hourly rates were too high. *Id.* ¶ 12.

Before ending the relationship with Southbank and JDS, Paul Weiss finished its due diligence work and delivered its report.[15] *Id.* ¶ 13. In this voluminous report, Paul Weiss stated that DreamWorks had been unable to produce a legible copy of the 1977 Agreement between Kersey and Green and DreamWorks' predecessors in interest, Golden Fleece and Six Strings. *Id.* Without a copy of the Agreement, the firm stated that it could not determine what interests in the Composition were transferred by the 1977 Agreement. *Id.* In an appendix to the report, Paul Weiss listed the outstanding due diligence questions being investigated by DreamWorks, a list which included questions about the content of the 1977 Agreement. *Id.* After turning over this report, Paul Weiss did no further work on the DreamWorks transaction. *Id.* ¶ 15. Plaintiff was the entity which eventually completed the deal for the DreamWorks catalog; it retained the

---

**13.** As stated by Paul Weiss, in such an agreement "the seller would be saying to the buyer only that the seller owned whatever the buyer could figure out from the thousands of agreements governing the seller's rights." *Id.* ¶ 10.

**14.** According to Paul Weiss, the final asset purchase agreement used in the DreamWorks transaction is the source of plaintiff's copyright problems. Had plaintiff used an asset purchase agreement like the one drafted by Paul Weiss, Paul Weiss argues, the risk of loss for any deficiencies in the transfer of rights of the Composition would have been on the seller, DreamWorks, and not on the buyer, plaintiff. *Id.* ¶ 18.

Plaintiff heartily rejects "the notion that DMP is somehow to blame" for failing to obtain the proper representations and warranties in the deal. Pl. Memo., Schoenfeld Decl. ¶ 2. According to plaintiff, DreamWorks refused to complete the deal with an asset purchase agreement like the one drafted by Paul Weiss, a fact purportedly known to Paul Weiss. *Id.* ¶ 11.

**15.** Paul Weiss delivered this report after JDS agreed to satisfy some of Bridgepoint's outstanding legal fees. Harper Decl. ¶ 13.

law firm of Reed Smith to represent it at the closing.[16] Harper Decl. ¶ 17.

### D. Paul Weiss's Motion to Dismiss or Stay

In defendant Paul Weiss's motion to dismiss or stay the action, it asserts two bases for dismissal: (1) lack of subject matter jurisdiction; and, (2) failure to state a claim.

Regarding the lack of subject matter jurisdiction, defendant first argues that plaintiff's claim against defendant is not ripe because the claim is contingent upon plaintiff losing its case against the Kersey defendants, an event which has yet to occur. Def. Memo. at 14–15. Second, defendant argues that plaintiff's claim against defendant, which is a state law claim pendent to its federal copyright claim against the Kersey defendants, does not arise from the same common nucleus of operative fact as plaintiff's copyright claim, and therefore, defendant argues, the Court does not have supplemental jurisdiction over this claim.[17] Id. at 17–22.

In addition, defendant argues that plaintiff has failed to state a claim for relief because defendant did not represent plaintiff in acquiring the rights to the Composition. Id. at 22–23. Furthermore, defendant contends that any failure of plaintiff to obtain the renewal rights to the Composition is due to plaintiff's failure to obtain unconditional representations and warranties regarding the Composition in the DreamWorks deal. Id. at 23.

In the event that the Court decides not to dismiss the action against defendant, defendant requests that the Court stay plaintiff's claim against defendant pending resolution of its claims against the Kersey defendants. Id. at 24.

## III. ANALYSIS

The Court will begin by addressing Paul Weiss's argument that it lacks supplemental jurisdiction over the case, because lack of subject matter jurisdiction will require the Court to dismiss the case. The Court concludes that there is a sufficient common nucleus of operative fact between plaintiff's state-law claim against defendant Paul Weiss and plaintiff's federal copyright claim against the Kersey defendants to allow the Court to exercise supplemental jurisdiction. Next, the Court will address defendant's ripeness argument, because a decision that the suit is not ripe does not automatically require dismissal. On this issue, the Court concludes that the ripeness doctrine is inapposite, and that plaintiff's suit against Paul Weiss will not be dismissed on that ground. Finally, the Court will address Paul Weiss's contention that plaintiff has failed to state a claim of legal malpractice. The Court disagrees with Paul Weiss and concludes that at this stage of the litigation plaintiff has set forth sufficient allegations to state a legal mal-

---

16. According to Joel Schoenfeld, plaintiff's CEO, JDS "created" plaintiff in order to complete the purchase of the DreamWorks catalog. Pl. Response, Schoenfeld Decl. ¶ 3. Plaintiff is controlled by the owner of JDS, the owner's father, and "closely related entities." Id.

17. The Court has original jurisdiction over plaintiff's copyright claim against the Kersey defendants. 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Con-

gress relating to patents, plant variety protection, copyrights, and trademarks."). However, without supplemental jurisdiction, the Court does not have jurisdiction over plaintiff's claim against defendant Paul Weiss, as plaintiff, which is incorporated as a Delaware limited liability corporation, has its principal place of business is in New York, and defendant Paul Weiss is a New York limited liability partnership with its principal place of business in New York. Compl. ¶¶ 10, 16.

practice claim. Regarding Paul Weiss's request to stay the action the Court agrees with defendant, and will stay the action against Paul Weiss pending the resolution of plaintiff's copyright claim, because the outcome of that claim will significantly affect its claim against Paul Weiss. However, pursuant to the Court's August 8, 2006 Scheduling Order, Paul Weiss will be required to participate in all discovery relating to the alleged assignment of renewal rights in the Composition and all other issues which relates to its potential liability.[18]

### A. Supplemental Jurisdiction

■ Under 28 U.S.C. § 1367, a federal district court facing a federal question claim may exercise supplemental jurisdiction over state law claims if they are "so related to claims in the action ... that they form part of the same case or controversy under Article III of the United States Constitution." The Third Circuit has interpreted § 1367 to mean that "a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir.2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Whether a court will exercise supplemental jurisdiction over a plaintiff's state-law claims is wholly within the court's discretion. *Growth Horizons, Inc. v. Del. County*, 983 F.2d 1277, 1284 (3d Cir.1993); *Mullen v. Thompson*, 155 F.Supp.2d 448, 454 (W.D.Pa.2001). In exercising this discretion, a court "should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." *Growth Horizons*, 983 F.2d at 1284 (internal quotation omitted); *Overall v. Univ. of Pennsylvania*, 393 F.Supp.2d 341, 342 (E.D.Pa.2005).

■ In the instant case, the facts underlying plaintiff's claim against the Kersey defendants and the facts underlying its claim against defendant Paul Weiss are related but distinct. Based upon the parties' submissions regarding the copyright claim, the question of the ownership of the renewal rights to the Composition will turn on whether Kersey transferred the renewal rights under the 1977 Agreement. The critical facts in plaintiff's legal malpractice claim against defendant Paul Weiss include the nature and scope of the relationship between plaintiff and Paul Weiss, the due diligence performed by Paul Weiss, and the legal advice given to plaintiff by Paul Weiss.

Despite the distinct facts underlying plaintiff's two claims, the Court will exercise supplemental jurisdiction over plaintiff's legal malpractice claim against defendant Paul Weiss. In plaintiff's legal malpractice suit, it will be required to prove that it did not obtain the renewal rights to the Composition, and that this failure was due to Paul Weiss's legal advice. In other words, plaintiff will have to demonstrate that "but for" defendant's legal advice it would not have been forced to sue the Kersey defendants over the renewal rights and it would not have lost this lawsuit. This is commonly known as the "case within a case" requirement of New York legal malpractice claims.[19] *Ru-*

---

**18.** In that same Order, the Court deferred all discovery pertaining solely to plaintiff's claim against Paul Weiss.

**19.** In their briefs, both parties discuss the significance of New York's legal malpractice

law. Based on that briefing, it appears that the parties agree that New York law applies to this dispute. *See Zhadanov v. Gold & Wachtel*, 2000 WL 1469840, at *3 n. 4 (S.D.N.Y. Sept. 29, 2000) (finding that because each

*bens v. Mason,* 387 F.3d 183, 190 (2d Cir. 2004) ("The malpractice judge or jury must decide a 'case within a case' and determine what the result would have been absent the alleged malpractice.") (applying New York law); *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,* 10 A.D.3d 267, 271–72, 780 N.Y.S.2d 593 (N.Y.App.Div.2004). To prove plaintiff's case within the case against defendant Paul Weiss, plaintiff will be required to prove all the same facts as in its case against the Kersey defendants. Requiring plaintiff to try this case to two separate courts is not just inconvenient, but inefficient.[20] *See, e.g., Archbold v. Liberty Mut. Group Disability Claims,* 2003 WL 22100863, at *2 (E.D.Pa. Aug. 14, 2003) (exercising supplemental jurisdiction in the interest of judicial efficiency); *see also Straughn v. Delta Air Lines, Inc.,* 170 F.Supp.2d 133, 147 (D.N.H.2000) ("It certainly would not represent an efficient use of limited judicial resources to require the parties to proceed to state court, and relitigate the state claims before a court unfamiliar with the many details of the case.").[21] Moreover, even if plaintiff wins its suit against the Kersey defendants and establishes that it owns 100% of the renewal rights in the Composition, it would have the right to proceed against defendant Paul Weiss to recover the legal expenses in pursuing its claim against the Kersey defendants.

Because questions of supplemental jurisdiction are fact-intensive, legal precedent in other cases is often of little assistance. *See Nanavati v. Burdette Tomlin Mem. Hosp.,* 857 F.2d 96, 105 (3d Cir. 1988) ("In trying to set out standards for supplemental jurisdiction and to apply them consistently, we observe that, like unhappy families, no two cases of supplemental jurisdiction are exactly alike."). The Court notes, however, a recent case from the Southern District of New York with similar facts where the court also chose to exercise supplemental jurisdiction. In *Achtman v. Kirby, McInerney & Squires, LLP,* 404 F.Supp.2d 540 (S.D.N.Y.2005), the plaintiffs in a securities class action which was already pending before the court filed a lawsuit for legal malpractice against the attorneys representing them in the class action. *Id.* at 543. Because it was "beyond dispute" that the court had original jurisdiction over the underlying action, the district court concluded that it had supplemental jurisdiction over the malpractice claim, noting that plaintiffs' theory of recovery in their legal malpractice claim was "integrally related to the underlying litigation." *Id.* at 546, 547.

---

party cited New York law, the parties agreed "by implication" that New York law applied).

**20.** The fact that plaintiff's legal malpractice claim will turn, in part, on a federal copyright claim is another reason for the Court to exercise supplemental jurisdiction. *See Waterman v. Transp. Workers' Union Local 100,* 8 F.Supp.2d 363, 369 n. 2 (S.D.N.Y.1998) ("The fact that the malpractice claim turns on federal law is another reason to retain jurisdiction.").

**21.** Collateral estoppel prevents relitigation of a fact or legal issue litigated in an earlier action. *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 169 (3d Cir.1999) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). However, decision on the copyright claim in this case would not be given preclusive effect on plaintiff's claim against defendant Paul Weiss unless Paul Weiss is a party to the copyright action. *Seborowski,* 188 F.3d at 169 ("In order for the doctrine [of collateral estoppel] to apply ... the party against whom the doctrine is asserted must have been a party or in privity with a party to the prior adjudication.").

In this case, it is beyond dispute that the Court has jurisdiction over plaintiff's underlying copyright action, and plaintiff's theory of recovery in their legal malpractice action is integrally related to their copyright action. Therefore, the Court will exercise supplemental jurisdiction over plaintiff's legal malpractice claim against defendant Paul Weiss.

**B. Ripeness**

 Defendant Paul Weiss contends that plaintiff's case against it must be dismissed for lack of ripeness. Ripeness is a justiciability doctrine, drawn from both Article III of the Constitution and prudential concerns, which prevents the courts from "entangling themselves in abstract disagreements." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (internal citations omitted); *NE Hub Partners, L.P v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir.2001). In determining whether a case is ripe for adjudication, courts consider "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 004) (Alito, J.) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

 The Court concludes that plaintiff's claim against defendant Paul Weiss cannot be analyzed under the ripeness doctrine, because, at this time, plaintiff is not asking for a judgment against defendant Paul Weiss. Instead, plaintiff seeks relief from Paul Weiss in the alternative. Compl. ¶ 5 ("DMP, *pleading in the alternative*, further alleges that if ... DMP paid for, but did not obtain, all right, title and interest in the Composition ... this failure was the direct and proximate result of professional negligence—legal malpractice—by the co-defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP.") (emphasis original). Pleading in the alternative is expressly permitted under Fed.R.Civ.P. 8(e)(2). *Indep. Enterprises Inc. v. Pittsburgh Water and Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir.1997). Simply because the outcome of one claim is contingent upon the outcome of another claim in the case does not mean that the first claim cannot be alleged or that the first claim is not ripe. *In re G–I Holdings, Inc.*, 2006 WL 1751793, at *9 (D.N.J. June 21, 2006); *see also RCI Entertainment (San Antonio) v. City of San Antonio*, 2006 WL 1149173, at *3 (W.D.Tex. Apr. 14, 2006) ("Inconsistent and contingent claims pleaded in the alternative, however, are ripe and do establish a judicially cognizable case or controversy."). Due to the uncertain nature of plaintiff's damages,[22] the Court cannot adjudicate plaintiff's claim against Paul Weiss until its case against the Kersey defendants is resolved. Nevertheless, the Court will not dismiss plaintiff's claim against Paul Weiss, and will instead stay the claim pursuant to the requirement that Paul Weiss participate in all discovery in plaintiff's case against the Kersey defendants which relates to its potential liability.[23]

---

**22.** For example, if plaintiff is found to have obtained Kersey's renewal rights to the Composition, the extent of plaintiff's damages may be limited to the costs of pursuing its claim against the Kersey defendants. On the other hand, if plaintiff did not obtain Kersey's renewal rights, its damages will be significantly greater, including the loss of profits from the renewal rights. *See* Compl. ¶ 9 ("If DMP prevails on its declaratory judgment claim, DMP will be able to avoid the more serious consequences of Paul Weiss's malpractice.").

**23.** A potential hazard should the Court dismiss plaintiff's claim as unripe is that the statute of limitations on plaintiff's legal mal-

## C. Failure to State a Claim

■ Defendant argues that "nothing in the complaint alleges, nor could it, that Paul, Weiss represented this plaintiff in the acquisition of copyright interests in *Disco Inferno.*" Def. Memo. at 23. The Court disagrees. At the outset, the Court observes that in deciding this portion of defendant's motion, which moves for dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court may only consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and concededly authentic documents relied on by the plaintiff. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). While the facts recounted in section II(A) *infra* came from documents beyond the Complaint, these facts were included only because they could be considered in deciding defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Therefore, in this section, the Court accepts as true the facts alleged in the Complaint, drawing all reasonable inferences in favor of plaintiffs. *In re Merck & Co., Inc. Securities Litig.,* 432 F.3d 261, 266 (3d Cir.2005). The

Court will grant a defendant's motion to dismiss only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the Complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ In order to state a claim for legal malpractice under New York law, a plaintiff must allege: (1) the negligence of the attorney; (2) that the negligent was the proximate cause of the loss sustained; and, (3) actual damages.[24] *Brooks v. Lewin,* 21 A.D.3d 731, 734, 800 N.Y.S.2d 695 (N.Y.App.Div.2005) (citing *Reibman v. Senie,* 302 A.D.2d 290, 290, 756 N.Y.S.2d 164 (N.Y.App.Div.2003)). Plaintiff alleges that defendant Paul Weiss was negligent in failing to discover and report to plaintiff the risk that there was never a valid transfer of Kersey's renewal rights in the Composition. Compl. ¶ 74. As the "proximate and direct result" of this negligence, plaintiff sustained damages, including, but not limited to, "the costs and disbursements, including attorneys' fees, to evaluate the Kersey Estate's claim."[25] *Id.* ¶ 76.

---

practice claim may expire before their case against defendant Paul Weiss becomes ripe. The state of limitations in New York for legal malpractice is three years. N.Y. C.P.L.R. § 214(6). The statute of limitations begins to run on the date of the injury, which is when the malpractice was committed. *Shumsky v. Eisenstein,* 96 N.Y.2d 164, 726 N.Y.S.2d 365, 750 N.E.2d 67, 69 (2001). In this case, the malpractice was committed when defendant Paul Weiss completed its allegedly inadequate due diligence work, which was on or about August 20, 2004. Compl. ¶ 44; Harper Decl. ¶ 13. If plaintiff's claim against defendant Paul Weiss is not ripe until its case against the Kersey defendants is resolved, plaintiff may not be able to bring suit until after August 20, 2007, which would be when the statute of limitations on plaintiff's legal malpractice claim would expire.

**24.** As discussed in section III(A) above, the plaintiff in a legal malpractice action must also prove the case within the case, i.e., that but for the attorney's negligence the plaintiff would have won the underlying lawsuit or would not have sustained damages. This requirement has been interpreted as part of the proximate cause element and as a fourth element in legal malpractice claims. *Compare Town of North Hempstead v. Winston & Strawn, LLP,* 28 A.D.3d 746, 748, 814 N.Y.S.2d 237 (N.Y.App.Div.2006) (defining as fourth element), *with Brooks v. Lewin,* 21 A.D.3d 731, 734, 800 N.Y.S.2d 695 (N.Y.App. Div.2005) (defining as part of proximate cause element).

**25.** As discussed in section III(C) above, the extent of plaintiff's damages cannot be determined until their case against the Kersey defendants is resolved.

█ It is correct, as defendant argues, that plaintiff must have had an attorney-client relationship with defendant in order to assert a claim of legal malpractice. *Drummond v. Drummond,* 291 A.D.2d 368, 369, 737 N.Y.S.2d 628 (N.Y.App.Div. 2002). However, plaintiff's Complaint asserts a relationship between the two that, if not rising to the level of an attorney-client relationship, was at least a relationship of privity. *See Prudential Ins. Co. v. Dewey Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 382, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992) (stating that attorneys may be held liable for malpractice if their relationship with plaintiff was "so close as to approach that of privity"); *see also AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.,* 5 N.Y.3d 582, 595, 808 N.Y.S.2d 573, 842 N.E.2d 471 (2005) (stating that a cause of action exists for legal malpractice "[w]here the relationship of the parties ... reveal[s] actual privity or a relationship that otherwise closely resembles privity").[26]

Regarding defendant's second contention—that plaintiff has only itself to blame if it failed to obtain the renewal rights to the Composition—the Court finds that this is an issue best addressed at a later stage of the litigation, since causation is typically a fact-based inquiry. *See Carver v. Foerster,* 102 F.3d 96, 101 (3d Cir.1996) ("The issue of causation is a fact-driven inquiry."). Until the Court is presented with additional facts and there is a determination that plaintiff did not obtain the renew-

al rights to the Composition, the Court cannot rule on the cause of plaintiff's failure to obtain the renewal rights.

**D. Application for a Stay**

█ As discussed above, the Court concludes that it has supplemental jurisdiction over plaintiff's claim against defendant Paul Weiss, and that plaintiff has stated a claim for relief against defendant for legal malpractice. Although the Court concludes that plaintiff's claim against Paul Weiss cannot be adjudicated on the present state of the record, the Court will not dismiss the action and instead will issue a stay order subject to certain conditions. A court's authority to stay actions is incidental to its power to "dispose of cases so as to promote their fair and efficient adjudication." *United States v. Breyer,* 41 F.3d 884, 893 (3d Cir.1994) (citing *Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068, 1077 (3d Cir.1983)); *see also Chartener v. Provident Mut. Life Ins. Co.,* 2003 WL 22518526, at *1 (E.D.Pa. Oct. 22, 2003) ("A district court has broad discretionary power to stay proceedings.").

█ In determining whether to stay an action, a court must weigh the competing interests of the parties, as well as the possibility that a stay would harm one of the parties. *Warcloud v. Horn,* 1999 WL 286444, *1 (E.D.Pa. May 5, 1999). The Court finds that it is in Paul Weiss's interest to stay the case until plaintiff's copyright case against the Ker-

---

**26.** In determining whether a relationship closely resembles privity, a court considers: (1) awareness that the information furnished by defendant was to be used for a particular purpose; (2) reliance by the plaintiff in furtherance of that purpose; and, (3) some conduct by the defendant linking them to the plaintiff and demonstrating defendant's understanding of plaintiff's reliance. *Security Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.,* 79 N.Y.2d 695, 714, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (1992). In the instant case, plaintiff has alleged that defendant Paul Weiss was aware that their due diligence report would be used in the DreamWorks transaction; plaintiff relied on that report in the transaction; and defendant engaged in conversations and transactions with plaintiff evincing an understanding of plaintiff's reliance. Therefore, plaintiff has alleged a relationship with defendant that closely resembles privity.

sey defendants is resolved. While plaintiff has an interest in timely litigation of its legal malpractice claim against defendant Paul Weiss, resolution of this claim requires that the copyright claim against the Kersey defendants be resolved first, regardless of whether the claim against defendant Paul Weiss is stayed. "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of North Am.*, 544 F.2d 1207, 1215 (3d Cir.1976); *see, e.g., Glades Pharm., LLC v. Call, Inc.*, 2005 WL 563726, at *9 (E.D.Pa. Mar. 9, 2005) (staying action pending outcome of lawsuit in another jurisdiction which might have collateral estoppel effect). Moreover, the extent of the discovery required in plaintiff's case against Paul Weiss will depend on the decision in plaintiff's copyright case against the Kersey defendants. Therefore, the Court will stay plaintiff's claim against Paul Weiss until plaintiff's claim against the Kersey defendants is resolved, and has deferred all discovery pertaining solely to plaintiff's claim against Paul Weiss. However, Paul Weiss is required to participate in all discovery in plaintiff's case against the Kersey defendants which relates to its potential malpractice liability.

## IV. CONCLUSION

For the reasons above, the Court exercises supplemental jurisdiction over plaintiff's legal malpractice claim against Paul Weiss, and denies defendant's motion to dismiss. However, the court grants Paul Weiss's motion to stay, subject to the requirement that Paul Weiss participate in all discovery in plaintiff's case against the Kersey defendants which relates to its potential malpractice liability. An appropriate Order follows.

*ORDER*

**AND NOW,** this 25th day of August, upon consideration of Defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP's Motion to Dismiss or Stay the Action (Document No. 17, filed February 13, 2006), Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss and for a Stay of Defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP (Document No. 22, filed May 13, 2006), Paul Weiss's Response Brief in Further Support of its Motion to Dismiss or Stay (Document No. 30, filed March 27, 2006), Paul Weiss's Supplemental Memorandum in Support of Motion to Dismiss or Stay (Document No. 39, filed May 22, 2006), and Plaintiff's Reply to Paul Weiss's Supplemental Memorandum in Support of Motion to Dismiss or Stay (Document No. 40, filed May 26, 2006), **IT IS ORDERED** that Defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP's Motion to Dismiss or Stay the Action is **GRANTED IN PART** and **DENIED IN PART,** as follows:

1. That part of defendant's motion which seeks to dismiss plaintiff's claim against Paul, Weiss, Rifkind, Wharton & Garrison LLP is **DENIED;** and,

2. That part of defendant's motion which seeks to stay plaintiff's case is **GRANTED,** subject to the requirement that defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP participate in all discovery in plaintiff's case against the Kersey defendants which relate to its potential liability.