■ Lisa Bishop et al., Appellants, v Rona Maurer, Defendant, and Goodkind Labaton Rudoff & Sucharow, LLP et al., Respondents. [823 NYS2d 366]—

Order, Supreme Court, New York County (Emily Jane Good-

man, J.), entered on or about October 14, 2004, which, upon the grant of reargument, adhered to a prior order, same court and Justice, entered November 20, 2003, inter alia, granting defendants-respondents' motion to dismiss plaintiff's cause of action for legal malpractice, affirmed, without costs. Appeal from the November 20, 2003 order unanimously dismissed, without costs, as superseded by the appeal from the October 14, 2004 order.

Generally, on a motion to dismiss brought pursuant to CPLR 3211, the court must " 'accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory' " (*Morgenthow & Latham v Bank of N.Y. Co.*, 305 AD2d 74, 78 [2003], *lv denied* 100 NY2d 512 [2003], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). The court, however, is not required to accept factual allegations, or accord favorable inferences, where the factual assertions are plainly contradicted by documentary evidence (*Robinson v Robinson*, 303 AD2d 234, 235 [2003]; *Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81 [1999], *affd* 94 NY2d 659 [2000]).

In order to state a cause of action for legal malpractice, the complaint must set forth three elements: the negligence of the attorney; that the negligence was the proximate cause of the loss sustained; and proof of actual damages (*Reibman v Senie*, 302 AD2d 290 [2003]; *Schwartz v Olshan Grundman Frome & Rosenzweig*, 302 AD2d 193, 198 [2003]). In order to establish proximate cause, a plaintiff must demonstrate that "but for" the attorney's negligence, the plaintiff would either have prevailed in the matter at issue, or would not have sustained any "ascertainable damages" (*Brooks v Lewin*, 21 AD3d 731, 734 [2005], *lv denied* 6 NY3d 713 [2006]; *Reibman v Senie*, 302 AD2d at 290-291).

In the matter before us, plaintiff's allegations that defendants attorneys failed to perceive that they had a conflict of interest, and failed to inform him as to the provisions of the estate planning instruments he executed, do not state a cognizable claim for legal malpractice in view of the clear and unambiguous documentary evidence.

Initially, we note that plaintiff executed a retainer letter, pursuant to which he and his defendant wife engaged defendants, which provides: "Any relationship between a lawyer and a client is subject to Rules of Professional Conduct. In estate planning, ethical rules applicable to conflicts of interest and confidentiality are of primary concern. By countersigning a copy

of this letter, you each acknowledge that you have had the opportunity to consult independent legal counsel with respect to your estate planning, and you each affirmatively waive with full understanding any conflict of interest inherent in your both relying on the advice of this firm and its attorneys."

Moreover, the agreement executed by plaintiff, which concerns his individual retirement account and employee stock option plan proceeds, unequivocally states: "[Plaintiff] and Rona hereby acknowledge that they have retained the law firm of Goodkind Labaton Rudoff & Sucharow LLP ('GLRS') to provide legal advice with respect to their estate planning, and, in connection therewith, that they have asked GLRS to draft this Agreement. Each of [plaintiff] and Rona hereby further acknowledges that he or she has read this Agreement, and understands it and has had the opportunity to consult independent legal counsel with respect thereto. Finally, each of [plaintiff] and Rona hereby waives with full understanding any conflict of interest inherent in their both relying on the advice of GLRS, and hereby agrees to indemnify and hold harmless GLRS against any costs or expenses (including reasonable attorneys fees) arising out of or otherwise related to any claim made by either of them."

In view of the above, it is clear that, contrary to plaintiff's claim in his complaint that defendants "failed to advise him of a conflict in their simultaneous representation of him and [his wife]," plaintiff was, in fact, advised of, and agreed to waive, any claim arising out of conflicts potentially posed by defendants' dual representation. Further, plaintiff's allegations, even if accepted as true, do not allow an inference that defendants should have perceived such a conflict arising out of plaintiff's apparently hostile relationship with his wife. To the extent that plaintiff maintains that he was misled with regard to how the instruments restricted his rights, given the clarity of the estate instruments at issue, plaintiff is responsible for his signature and is bound to read and know what he signed (*Beattie v Brown & Wood*, 243 AD2d 395 [1997]). Moreover, the complaint is silent as to how defendants misled plaintiff, what defendants failed to explain to him, and what specific plans or bequests he informed defendants of but the documents do not reflect.

We find plaintiff's reliance on *Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner* (96 NY2d 300 [2001]) to be misplaced. In *Arnav*, the Court was presented with an anomalous fact pattern, in that plaintiffs clients had engaged defendant law firm to prepare a settlement agreement, which defendant then drafted and forwarded to plaintiffs. A

principal of plaintiffs then read the agreement, executed it and returned it to defendant. Defendant subsequently forwarded a revision of the agreement to plaintiffs a few days later, and advised them that a typographical error had been identified, and corrected, in the first paragraph and that, otherwise, the revision was identical to the original version that had already been signed. It was later discovered, however, that the revision contained an error of almost $4,000,000 to plaintiff's detriment.

The Court of Appeals, in reinstating plaintiffs' legal malpractice claim, observed, as we do here, that "a party who signs a document is conclusively bound by its terms absent a valid excuse for having failed to read it" (*id.* at 304), but concluded that dismissal in that matter was precluded at that stage of the proceedings because the plaintiffs were entitled to rely on the defendants' representation that the revision, other than one minor correction, was identical to a document plaintiff had reviewed, agreed to and executed. In sum, we conclude that the holding in *Arnav* is limited to the unique facts of that case, which the Court of Appeals ultimately found excepted it from the general rule that "a party who signs a document is conclusively bound by its terms absent a valid excuse for having failed to read it" (*id.*). Further, we disagree with the dissent's attempt to equate plaintiff's apparent failure, in this case, to make any effort at all to read the documents,* to the plaintiff in *Arnav*, who read, reviewed and then executed the documents, and went so far as to re-review that part of the amended agreement which contained, according to his attorney, the only correction in the document, that of a typographical error.

Finally, to the extent that plaintiff claims he was suffering from a "mild cognitive impairment," there is no allegation that defendants knew or should have been aware of this condition, or that plaintiff lacked the capacity to execute the instrument. In fact, no elaboration whatsoever is provided regarding this alleged infirmity and we cannot agree with the dissent that this lack of elaboration is irrelevant simply because we must accept the allegations of the complaint as true. Indeed, plaintiff's failure to tie the alleged "cognitive impairment" into either an inability to read and understand the documents, or to some action

---

* We find this lack of vigilance all the more remarkable in light of allegations, set forth in the complaint, that plaintiff's wife "declared" and "demanded" that plaintiff transfer the ownership of certain properties in question to her, "repeatedly demanded" that "I've got to have everything in my name," and engaged in a "persistent course of harassment and abuse" of plaintiff "characterized by relentless screaming and demands" which, the wife purportedly exclaimed, would cease "once [plaintiff] signed the papers she wanted."

or inaction on the part of defendants, renders the purported condition to be, in our eyes, inconsequential. Concur—Mazzarelli, J.P., Saxe, Nardelli and Sweeny, JJ.

McGuire, J., dissents in a memorandum as follows: I respectfully dissent as I would uphold the sixth cause of action for legal malpractice. In his complaint, plaintiff alleges that he did not appreciate the actual content and the legal consequences of the documents the defendant attorneys (the defendants) drafted for him. Specifically, he alleges that defendants told him that "documents were prepared giving [his wife] a life estate in the Apartment and House . . . for the purpose of financial and estate tax planning to save income taxes and inheritance taxes." Plaintiff alleges as well that he executed the trust and the agreement "[p]ursuant to th[at] representation" and "reasonably relied on representations of [his wife], and [the defendants], that the Trust and Agreement gave a life estate to [his wife] and were for proper financial and estate tax planning purposes." In addition, plaintiff alleges that "[a]t the time he signed the Trust and the Agreement, [he] was not advised that those documents limited his right to alter his dispositions of the Apartment, the House or his other property." Relatedly, plaintiff alleges he "was not informed, and was not aware" when he executed the trust and the agreement that his wife could do as she pleased with his assets, to the detriment of his own issue, if he predeceased her.

Thus, plaintiff essentially alleges that the defendants wrongly advised him that the trust and the agreement gave his wife a life estate and only gave her a life estate. Plaintiff, moreover, is not alleging mere negligence on the part of the defendants. In fact, he alleges as follows: "The representations made by the defendants as to the purposes of the Trust and the Agreement were false when made and were made to induce [plaintiff] to transfer his real property to [his wife] outright and to limit his access to his life savings."

Although the majority recognizes that the truth of these allegations of misconduct by the defendants ordinarily must be accepted on a CPLR 3211 motion to dismiss, it concludes that plaintiff's legal malpractice claim is conclusively refuted by documentary evidence. Specifically, relying in part on the ostensible "clarity" of the trust and agreement, the majority concludes that "plaintiff is responsible for his signature and is bound to read and know what he signed (*Beattie v Brown & Wood*, 243 AD2d 395 [1997])."

However, in *Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner* (96 NY2d 300 [2001]), the

Court of Appeals held that although "a party who signs a document is conclusively bound by its terms absent a valid excuse for having failed to read it" (*id.* at 304), the party so bound is not precluded from asserting a malpractice clam against the attorneys who prepared, or advised the party about, the agreement (*id.* at 304-305). The majority recognizes that the malpractice claim in *Arnav* was upheld because the plaintiffs were "entitled to rely on the defendants' representation" concerning the nature of the revisions to the document. In my view, plaintiff's malpractice claim should be upheld for the same reason. After all, plaintiff's failure to understand the legal significance of the trust and the agreement, like the failure of the plaintiffs in *Arnav* to read the entire settlement agreement, is allegedly the result of erroneous advice by his attorneys. Plaintiff, moreover, is alleging that the advice was not merely erroneous but was knowingly false. By contrast, no such claim was made in *Arnav*.[1]

The majority's reliance on the retainer letter and the similar waiver language in the agreement is misplaced. Even if plaintiff thereby waived any claim against the defendants based on the conflict of interest stemming from the joint representation of plaintiff and his wife, it hardly follows that plaintiff waived as well his claim that the defendants knowingly misrepresented to him the nature and legal consequences of the trust and the agreement. Nor should it matter that the agreement also recites that plaintiff acknowledges reading and understanding the document. Notably, the trust does not contain any such recitation and thus cannot affect the viability of plaintiff's claims based on the defendants' advice concerning the trust. In any event, it is not obvious why that recitation would create any impediment to plaintiff's claim beyond the one created by the rule, applicable in the absence of such a recitation, that "a party who signs a document is conclusively bound by its terms absent a valid excuse for having failed to read it" (*Arnav*, 96 NY2d at 304).

Unfortunately, the reality is that incorrect advice to clients, due to an attorney's sloppiness, incompetence, inexperience or

---

**1.** As is clear from the allegations of the complaint discussed above, the majority errs in concluding that plaintiff failed to specify how the defendants misled him. Fairly read, moreover, and giving plaintiff "the benefit of every possible favorable inference" (*Arnav*, 96 NY2d at 303), the complaint does allege "affirmative misrepresentation[s]" by the defendants about the legal significance of the trust and the agreement. The majority also errs in referring to plaintiff's "apparent failure . . . to make any effort at all to read the documents." The nature and extent of the effort plaintiff made to read the documents was not litigated on this motion to dismiss and plaintiff certainly did not concede he made no such effort.

other reason, is not unprecedented. At least some clients, moreover, will rely on what their attorneys tell them about complex legal documents presented to them for signature, and either not read the documents before signing them or read and sign them without understanding them. A self-serving recitation that the client read and understood a document should not invariably be sufficient to defeat a malpractice claim based on the attorney's advice concerning the legal significance of the document.

In this regard, I note as well that plaintiff alleges he was over 80 years old when he signed the trust and the agreement, and that his doctor—an expert in cognitive impairments who is identified by name in the complaint—diagnosed him as having a mild cognitive impairment and prescribed medication for that condition in 2000, the year before he acceded to his wife's alleged badgering and met with the lawyers with whom she previously had consulted. If, as I would conclude, the ultimate issue is the reasonableness of plaintiff's claim that he did not read or did not understand the documents prepared by the defendants,[2] plaintiff's allegations concerning his age and cognitive impairment provide an additional reason not to dismiss his complaint at the pleading stage. And if, as plaintiff alleges, the defendants knowingly misrepresented the content and legal effect of the trust and the agreement, it cannot be relevant that plaintiff does not allege that the defendants were aware of his infirmity.

The majority notes that plaintiff does not allege he "lacked the capacity to execute the instrument[s]." From this, however, it follows only that plaintiff cannot claim incapacity as a ground for voiding the instruments. The absence of "elaboration" regarding plaintiff's mild cognitive impairment is irrelevant. No case holds that the requirement on a CPLR 3211 motion that we accept the allegations of a complaint as true is dependent on such elaboration. As for the "clarity" of the trust and the agreement, without the benefit of a law degree many individuals, including persons who are not elderly and who have no cognitive impairments, may be in the dark about their legal import.

Whatever degree of skepticism may be warranted about plaintiff's ability to prove his malpractice claim, it is irrelevant to the proper resolution of the motion to dismiss. I recognize that permitting plaintiff's claim to go forward to discovery

---

**2.** In *Arnav*, the Court stated that the differences between the two stipulations did "not establish that plaintiffs' excuse for not reading the stipulation is *invalid*" (96 NY2d at 304 [emphasis added]). Presumably, an unreasonable excuse for not reading or failing to understand a document before signing it would render the excuse "invalid" and preclude a malpractice claim based on advice by the attorney concerning the legal significance of the document.

would establish a precedent that might well lead to more attorneys being exposed to baseless claims of malpractice and misconduct. But at this juncture we must accept the allegations as true and I fail to see how those potential costs properly can be avoided by affirming the dismissal of plaintiff's malpractice claim. Denying plaintiff any chance to prove his claims is not consistent with the unique obligations of an attorney, which "transcend those prevailing in the commercial market place" (*Matter of Cooperman*, 83 NY2d 465, 472 [1994]), and risks undermining the confidence of the public in the profession (*see id.*).