■ HERITAGE PARTNERS, LLC, et al., Appellants, v STROOCK & STROOCK & LAVAN LLP, Respondent. [19 NYS3d 511]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered May 9, 2014, which granted defendant's motion to dismiss the complaint alleging legal malpractice, unanimously affirmed, with costs.

The court applied the correct standard and properly dismissed the complaint. Its unsupported factual allegations, speculation and conclusory statements failed to sufficiently show that but for defendant's alleged failure to advise plaintiffs to pursue Chapter 11 bankruptcy upon their default on a $47 million loan, plaintiffs would not have lost approximately $80 million in equity in the underlying condominium project in Tribeca (*Dweck Law Firm v Mann*, 283 AD2d 292, 293 [1st Dept 2001]; *see also David v Hack*, 97 AD3d 437, 438 [1st Dept 2012]; *O'Callaghan v Brunelle*, 84 AD3d 581 [1st Dept 2011], *lv denied* 18 NY3d 804 [2012]).

Plaintiffs, who defaulted on the loan in May 2009, alleged damages of approximately $80 million in lost equity based on sales figures of units that sold after the lender assumed ownership of the underlying property in 2010. While plaintiffs argue that the amount was also based on an expert appraisal, no basis for the amount is apparent, other than later sales in 2010 and 2011, after the lender took over, and after the market had improved. Plaintiffs' calculation also ignores that the Attorney General would not, as of December 2009, allow the sponsor, plaintiff 415 Greenwich LLC, to sell any units because it had failed to submit a plan that sufficiently stated how it would pay its arrears and other financial obligations in connection with the condominium units. Thus, plaintiffs' speculative and conclusory allegations do not suffice to show actual ascertainable damages (*Pellegrino v File*, 291 AD2d 60, 63 [1st Dept 2002], *lv denied* 98 NY2d 606 [2002]).

Moreover, plaintiffs failed to allege sufficient facts to show

that but for defendant's failure to advise them to pursue a Chapter 11 reorganization, they would have retained the building and thus preserved their owner equity (*Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438, 442 [2007]; *Dweck Law Firm* at 293). Among other things, plaintiffs speculate that the individual plaintiffs would agree to trigger the "bad boy" guarantees in the loan agreement, which would hold them personally liable for the debt if the borrowing company pursued the bankruptcy option. Plaintiffs further speculate that a bankruptcy court might agree to enjoin or stay any such proceeding to enforce those carveout guarantees. Plaintiffs also fail to allege facts sufficient to establish that they had funds to even initiate bankruptcy proceedings, and speculate that they would have obtained debtor-in-possession financing in a troubled economic climate. Plaintiffs argue that they would overcome these and other hurdles to obtaining Chapter 11 reorganization because their alleged $80 million "equity cushion" exceeded its roughly $63 million in total debt, but as noted above, this does not suffice. In light of the numerous obstacles to pursuing, let alone successfully achieving, Chapter 11 reorganization, plaintiffs' allegations were "couched in terms of gross speculations on future events and point[ed] to the speculative nature of plaintiffs' claim" (*Sherwood Group v Dornbush, Mensch, Mandelstam & Silverman*, 191 AD2d 292, 294 [1st Dept 1993]; *see also Perkins v Norwick*, 257 AD2d 48, 50-51 [1st Dept 1999]). Concur—Tom, J.P., Friedman, Andrias, Gische and Kapnick, JJ.