Utilisave, LLC v Fox Horan & Camerini, LLP (2026 NY Slip Op 50056(U))

[*1]

Utilisave, LLC v Fox Horan & Camerini, LLP

2026 NY Slip Op 50056(U)

Decided on January 20, 2026

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 20, 2026
Supreme Court, New York County

Utilisave, LLC, Plaintiff,

againstFox Horan & Camerini, LLP, OLEG RIVKIN, Defendants.

Index No. 652318/2014

Andrew Lavoott Bluestone, Esq. for PlaintiffLaw Office of Andrew Lavoott BluestoneJames G. McCarney, Esq. for DefendantsMcCarney Law, P.C.

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205 were read on this motion for SUMMARY JUDGMENT.
Defendants Fox Horan & Camerini, LLP ("Fox Horan" or the "Firm") and Oleg Rivkin ("Rivkin") (collectively, "defendants") move for summary judgment pursuant to CPLR § 3212, seeking dismissal of the complaint in its entirety. Plaintiff Utilisave, LLC ("Utilisave" or "plaintiff") commenced this action alleging legal malpractice, breach of contract, aiding and abetting breach of fiduciary duty, and unjust enrichment against its former attorneys (Fox Horan and Rivkin). Defendants now contend that no triable issues of fact exist and that they are entitled [*2]to judgment as a matter of law, dismissing all causes of action. Plaintiff opposes the motion.BACKGROUND AND PROCEDURAL HISTORYThis legal malpractice action arises from a protracted and acrimonious dispute between two business partners, Michael Steifman and Mikhail Khenin, over the management of their utility bill auditing company, Utilisave. Steifman founded Utilisave in 1992, and Khenin joined the business in 1997; by 2003 Khenin was promoted to CEO as the company grew profitable. Under an Amended Operating Agreement dated January 1, 2006, Steifman and Khenin became co-managing members of Utilisave, with major corporate decisions requiring their mutual consent. The 2006 agreements also extended Khenin's CEO tenure for a defined three-year term (set to expire on January 1, 2009).
In 2007, the previously amicable relationship between Steifman and Khenin broke down over various business issues. On May 4, 2007, Steifman (and an entity he controlled) filed an action in New York Supreme Court, Westchester County, against Khenin and Utilisave (the "Westchester Action"), alleging that Khenin, as Utilisave's CEO, had failed to pay Steifman certain owed salary and distributions and seeking, among other relief, Khenin's removal as CEO. Khenin and Utilisave each retained separate counsel in the Westchester Action, with Khenin hiring personal counsel and Utilisave initially appearing through a law firm selected by Khenin. Steifman moved to disqualify Utilisave's chosen counsel, arguing that as co-manager he had a right to participate in selecting the company's counsel and that Khenin's control of the defense counsel posed a conflict of interest. By decision and order dated November 1, 2007 (Hon. Kenneth W. Rudolph), the court denied Steifman's disqualification motion in its entirety. The court's order (the "2007 Disqualification Order") explicitly authorized Khenin to "select and direct counsel on behalf of Utilisave" to defend the Westchester Action. Thereafter, Khenin retained Fox Horan & Camerini, LLP, where Oleg Rivkin was a partner, to represent Utilisave in the litigation. Fox Horan had not previously represented either Utilisave or Khenin. Pursuant to the court's order, Fox Horan took instructions from Khenin (as Utilisave's CEO) throughout the Westchester Action.
The Westchester Action was hotly contested for over three years. It culminated in a two-week bench trial in early 2011. On June 23, 2011, the trial court (Hon. Alan D. Scheinkman) issued a post-trial decision & order (amended July 21, 2011) that granted only limited relief to Steifman. Specifically, the court awarded Steifman only a small fraction of the damages he sought and declined to remove Khenin as CEO during the litigation. Notably, however, the court found that during the pendency of the Westchester Action, Khenin had engaged in "egregious misconduct" by converting $655,000 of Utilisave's corporate assets for his personal benefit. As a sanction for that misconduct, the court imposed a $10,000 penalty against Khenin personally. Fox Horan's engagement as litigation counsel for Utilisave concluded at or around the end of the Westchester Action in 2011.
Parallel disputes between the partners proceeded in other forums. Because Utilisave is a Delaware limited liability company, certain issues of corporate governance and relief were addressed in Delaware's Chancery Court. Crucially, Khenin's employment contract as CEO [*3]expired by its terms on January 1, 2009, during the Westchester litigation. Without Steifman's consent (and indeed over his objection), Khenin took steps to unilaterally renew his CEO contract for an additional three-year term (the "Renewal") effective January 2009. The Renewal document was executed by Utilisave's President, Donna Miele, at Khenin's direction, but Fox Horan was not consulted about, and claims to have been unaware of, the Renewal at the time. When Steifman learned of this maneuver, the battle shifted to Delaware: Steifman (on behalf of MHS Ventures, his holding company) filed a petition in the Delaware Chancery Court seeking relief from Khenin's continued control, effectively attempting to remove or restrain Khenin (the "Delaware Removal Petition"). In September 2009, Chancellor Leo Strine, Jr. heard argument on the matter. Although Chancellor Strine expressed skepticism about the validity of Khenin's Renewal, he agreed (at least preliminarily) with Fox Horan's argument on behalf of Utilisave that the status quo should be maintained — i.e., that Khenin remain as acting CEO — until the disputes could be fully resolved. Meanwhile, the New York court (Justice Scheinkman) in the Westchester Action deferred to the Delaware Chancery Court on all issues concerning the "propriety and economic consequences" of Khenin's contract Renewal, citing comity and the fact that Utilisave's internal affairs were governed by Delaware law.
Subsequently, in 2012, after the conclusion of the Westchester trial, a court-appointed liquidator in Delaware was tasked with unwinding Utilisave's business. Utilisave's assets were sold, and Steifman (through a new entity) purchased those assets, thereby regaining control of the company's operations and rights. Steifman, now in control of "new" Utilisave, then pursued a "Delaware Damages Action" against Khenin to recover losses caused by Khenin's alleged misconduct (including the unauthorized Renewal, excess compensation, and misuse of corporate funds). That Delaware action (Utilisave, LLC v. Khenin, C.A. No. 7796, Del. Ch.) proceeded to a three-day bench trial. In a post-trial memorandum opinion dated August 18, 2015, the Delaware Chancery Court determined that the total damages caused by Khenin's breaches — including excessive salary, improper distributions, and attorney's fees incurred by Utilisave in the prior litigations — was $87,124.15. The court entered judgment in that amount against Khenin. In other words, after being fully heard in Delaware, Utilisave (with Steifman at the helm) obtained a binding adjudication quantifying the harm from Khenin's unauthorized extension of his tenure.
On the heels of those developments, Utilisave (as plaintiff, effectively controlled by Steifman) initiated the present action in 2014 against Fox Horan and Rivkin. The complaint asserts causes of action for legal malpractice, breach of contract, aiding and abetting breach of fiduciary duty, and unjust enrichment. In essence, plaintiff alleges that defendants acted negligently and disloyally during the Westchester Action by "unconditionally advising" or permitting Khenin to execute the secret Renewal of his employment contract, thereby enabling Khenin's self-dealing and prolonging his control to Utilisave's detriment. Plaintiff claims that, but for defendants' conduct, Khenin could have been removed or restrained sooner, sparing the company the financial losses caused by his excess compensation and the substantial legal fees expended in the ensuing fights (including the Delaware proceedings to unwind what Khenin had done). Plaintiff also seeks disgorgement of the legal fees paid to Fox Horan, on the theory that the firm was unjustly enriched by fees earned while breaching its fiduciary duties to the company.
During this litigation, the parties engaged in extensive discovery. The record reflects that over 95,000 emails were produced and reviewed, and numerous deposition transcripts and exhibits from both the New York and Delaware litigations were obtained. Defendants first moved for summary judgment in 2018 (the "First Motion for Summary Judgment"), prior to the completion of all discovery. By decision and order dated November 26, 2018 (NYSCEF Doc. 92), the Hon. Eileen Bransten (Justice Freed, sitting in Part 3 at that time) denied defendants' initial summary judgment motion. In that decision, Justice Freed made several pertinent rulings which became the law of the case for this litigation: (i) the 2007 Disqualification Order (allowing Khenin to choose Utilisave's counsel) has no preclusive effect on Utilisave's claims against Fox Horan; (ii) Utilisave's claims in this action are direct (not derivative) and are not dependent on any assignment of rights from Steifman or others; and (iii) at that juncture, defendants had not met their summary judgment burden, as there remained material questions of fact on plaintiff's malpractice allegations. In particular, Justice Freed found that defendants failed to demonstrate that plaintiff could not prove at least one essential element of legal malpractice, and thus summary judgment was inappropriate. Following that ruling, the parties completed the remaining discovery that had been outstanding in 2018 — most significantly, the deposition of Michael Steifman (plaintiff's principal) was taken, and the full results of the Delaware Damages Action (decided in 2015) were incorporated into the record.
Armed with the complete discovery record, defendants now renew their application for summary judgment (Motion Seq. #4). They assert that the evidence conclusively disproves plaintiff's allegations and that no triable issues remain. Plaintiff, in opposition, maintains that the core factual disputes identified by the prior court have not been resolved and that, if anything, the expanded record bolsters its case against defendants.

 ARGUMENTS
Defendants contend that summary judgment is warranted because plaintiff cannot establish any of its causes of action. In essence, defendants argue that: There is no evidence to support the complaint's central allegation (made only "upon information and belief") that Fox Horan advised or assisted Khenin with the 2009 Renewal of his CEO contract. Defendants point out that after a decade of litigation and discovery, including review of tens of thousands of emails, plaintiff has adduced nothing showing that Fox Horan drafted the Renewal, encouraged it, or even knew about it before the fact. To the contrary, Oleg Rivkin — the Fox Horan partner who handled the Westchester Action — affirms that the firm had "no role in counseling the Renewal" and first learned of the executed Renewal months after its date, when the Delaware petition was filed. Steifman himself admitted in deposition that he has no personal knowledge or documents indicating Fox Horan advised Khenin to execute the Renewal. Thus, defendants assert that no breach of duty on their part can be proven.
Defendants further assert that Utilisave is collaterally estopped from relitigating the damages caused by Khenin's unauthorized Renewal because those very damages were already sought and recovered (at least in part) in the Delaware Damages Action. In that action, the Delaware Chancery Court determined — after a full trial where Steifman and Utilisave were fully heard — the total amount of loss to the company from Khenin's wrongdoing (excess salary, [*4]distributions, and related legal fees) was $87,124.15. Defendants argue that this prior adjudication is binding on plaintiff here. In their view, plaintiff is attempting an impermissible "double recovery" by seeking the same damages a second time from defendants. Because the issue of Utilisave's damages from the Renewal was necessarily decided in the Delaware case, and plaintiff obtained a judgment for those damages, defendants contend that plaintiff cannot pursue additional or duplicative recovery in this malpractice suit.
Defendants also argue that, even assuming some lapse in representation, plaintiff cannot establish that any act or omission by Fox Horan was the proximate cause of Utilisave's alleged injuries. They emphasize that Khenin alone made the decision to execute the Renewal and to pay himself an excessive salary/distributions, and that these actions (and the breakdown of the relationship) were independent of any legal advice from Fox Horan. The substantial legal fees incurred by Utilisave, defendants argue, were a product of the "long-running acrimonious dispute" between Steifman and Khenin — a feud that predated Fox Horan's involvement and would have resulted in costly litigation regardless. In short, defendants posit that plaintiff cannot meet the "case-within-a-case" requirement for legal malpractice because there is no showing that, but for defendants' conduct, the outcome would have been any different. At most, Khenin's misconduct caused plaintiff's losses, and Khenin (not Fox Horan) has been held accountable for that.
Finally, defendants contend that plaintiff's ancillary causes of action are either duplicative or unsustainable. The breach of contract claim is based on the same alleged failures as the malpractice claim and seeks the same damages, so it adds nothing distinct. The claim for aiding and abetting breach of fiduciary duty (i.e. assisting Khenin's breach of duty to Utilisave) fails, according to defendants, because there is no evidence that Fox Horan knowingly participated in any fiduciary breach — again, they had no knowledge of the Renewal scheme at the time. As for unjust enrichment, defendants argue that Fox Horan was not "unjustly" enriched by its legal fees, since the firm provided legal services to Utilisave in the Westchester Action (helping to significantly limit Steifman's claims) and any fee disgorgement demand is simply a restatement of the malpractice/fiduciary duty claim. In New York, an unjust enrichment claim cannot stand when it duplicates a malpractice claim and arises from the same facts.
Plaintiff opposes the motion and maintains that numerous factual and legal issues must be resolved at trial. In substance, plaintiff argues that: Defendants' motion is a successive summary judgment motion that plaintiff contends is barred by the law of the case doctrine. Justice Freed's prior denial of summary judgment in 2018 — which found material issues of fact — is said to doom any successive motion for the same relief absent new facts. Plaintiff emphasizes that many of the exhibits and arguments now raised by defendants were already considered and rejected by Justice Freed. According to plaintiff, nothing materially changed since that first motion, and defendants are essentially trying to relitigate issues that have already been decided against them. As such, plaintiff asserts the motion should be denied on this ground alone.
Plaintiff maintains there is evidence from which a jury could find that Fox Horan participated in or at least facilitated Khenin's wrongdoing. Plaintiff argues that defendants were in a conflicted position from the start — they owed fiduciary duties to Utilisave, yet took direction [*5]from Khenin, who was acting in his own interest against the company's best interest. In plaintiff's view, Fox Horan continued to support and counsel Khenin even beyond the scope of representing Utilisave, effectively acting as Khenin's personal attorneys while still on Utilisave's payroll. For example, plaintiff points to Fox Horan's conduct in the Delaware proceedings: Fox Horan argued to keep Khenin in power (as "status quo" CEO) despite knowing his contract had lapsed, thereby enabling Khenin to prolong his breach of fiduciary duty to the company. Plaintiff alleges that Fox Horan even appeared on Khenin's behalf in certain matters, such as issues of advancement of legal fees or appeals, which went beyond representing the corporate entity and directly aligned the Firm with Khenin against Utilisave's true interests. These actions, plaintiff contends, breached defendants' duty of loyalty and constitute evidence of malpractice and aiding a fiduciary breach. At the very least, whether Fox Horan "crossed the line" in jointly representing Khenin is a factual question.
Plaintiff disputes that the Delaware judgment against Khenin shields defendants from liability or limits plaintiff's recovery here. First, plaintiff notes that defendants were not parties to the Delaware action, and the issues in this malpractice case are not identical to those in Delaware. The Delaware trial focused on Khenin's wrongdoing and personal liability; it did not litigate whether Fox Horan breached its duties or the standard of care — issues unique to this case. Thus, plaintiff argues, collateral estoppel does not neatly apply, because the "identical issue" requirement is not met. In particular, whether Fox Horan's negligence caused additional harm (such as prolonging the litigation or causing plaintiff to incur fees fighting Khenin) was not before the Delaware court. Second, plaintiff contends it has distinct damages here that were not recovered from Khenin. For example, plaintiff points to the legal fees it paid specifically to Fox Horan during the Westchester Action — fees that benefited Khenin (by defending his position) rather than the company. Those fees were not recouped in Delaware and, according to plaintiff, can be recovered via unjust enrichment or as damages for breach of fiduciary duty in this action. Plaintiff also suggests that it incurred additional expenses (for instance, the cost of litigating the malpractice itself or other clean-up costs) that were not part of the Delaware judgment. In sum, plaintiff argues that the Delaware outcome should not foreclose holding defendants accountable for their independent wrongdoing.
Plaintiff asserts that material factual disputes remain on the key elements of malpractice — namely, breach of duty and causation. Plaintiff emphasizes that direct evidence of an attorney's malpractice is often in the defendant's control and may be difficult to obtain; here, circumstantial evidence and credibility questions should be resolved in plaintiff's favor at trial. For instance, plaintiff argues a jury could disbelieve Rivkin's self-serving affidavit and infer, from all the circumstances, that Fox Horan likely did advise or tacitly approve the Renewal. The timing and sequence of events (with Fox Horan stepping in as Utilisave's counsel shortly before the Renewal and then arguing to uphold Khenin's status) could support an inference of involvement or negligent failure to object. Likewise, regarding causation, plaintiff contends it would at least be a jury question whether Fox Horan's actions proximately caused additional harm. Plaintiff's theory is that if Fox Horan had not been complicit or had properly informed the court of Khenin's misconduct early on, Khenin might have been ousted sooner or the company could have mitigated its losses. The fact that Utilisave eventually recovered some damages from Khenin does not negate that the company had to spend years in costly litigation (Dissolution [*6]proceedings, the Delaware trial, etc.) due to defendants' conduct. Allocation of those litigation costs and determination of causation, plaintiff argues, are classic jury issues.
Plaintiff also contends that defendants failed to meet their initial burden on this motion in multiple respects. Plaintiff notes that in the Commercial Division, a movant must provide a Statement of Material Facts pursuant to Rule 19-a, and defendants did not do so. This procedural lapse, according to plaintiff, is a ground to deny the motion outright or at least weighs against defendants' position. Substantively, plaintiff argues that defendants have not conclusively negated malpractice or other claims. For example, defendants offered no expert testimony to establish that their conduct met the applicable standard of care (especially given the conflict-of-interest issues). In a complex corporate litigation context, plaintiff contends, an expert would be necessary for defendants to show that their decisions and ethical judgments were appropriate. The absence of such expert proof is argued to be fatal to defendants' prima facie case. At minimum, plaintiff believes the conflicting inferences about Fox Horan's role require a fact-finder to assess credibility (particularly Rivkin's credibility versus Steifman's), which cannot be done on summary judgment.
In sum, plaintiff's position is that this motion should be denied in its entirety — both on procedural grounds (successive motion, lack of required statement) and on the merits — so that the case may proceed to trial where a jury can weigh the evidence and determine defendants' liability.

DISCUSSION
Summary judgment is a drastic remedy that will be granted under CPLR § 3212 only if the moving party has made a prima facie showing of entitlement to judgment as a matter of law by eliminating any material issues of fact. The movant must tender sufficient evidence in admissible form to demonstrate the absence of genuine factual issues. If this initial burden is not met, the motion must be denied, regardless of the sufficiency of the opposition papers (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). However, if the movant satisfies its burden, the onus shifts to the opposing party to "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact" (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). In other words, the opponent must submit evidence establishing a genuine, triable issue of fact, rather than merely conclusory allegations or speculation. All evidence must be viewed in the light most favorable to the non-movant, and the movant's burden on summary judgment is heavy (see Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007][movant must affirmatively demonstrate the merit of its claim, and issues of credibility or fact will preclude summary disposition]). A material issue of fact is genuine, bona fide and substantial (id.). Indeed, it must have real probative significance such that a fact-finder could reasonably resolve the issue in favor of the non-moving party (id.; see also Phillips-Smith Specialty Retail Group II v Parker Chapin Flattau & Klimpl, LLP, 265 AD2d 208, 210 [1st Dept 1999], lv denied 94 NY2d 759 [2000][claims based on "gross speculations" without factual support are insufficient to defeat summary judgment]).
Crucially, an attorney's affirmation or affidavit that is not based on personal knowledge [*7]of the relevant facts is without evidentiary value and cannot by itself create a triable issue of fact. To be sure, an opposing party must submit admissible evidence or acceptable excuses for the failure to do so; a hearsay or conclusory affirmation from counsel alone will not suffice (JMD Holding Corp. v. Congress Fin. Corp., 4 NY3d 373, 384-385 [2005]). As the Court of Appeals has admonished, the submission of a hearsay attorney affirmation with no firsthand knowledge does not satisfy this requirement of responsive proof on summary judgment (id.). In the same vein, the Appellate Division, First Department, has long held that an "affidavit of [a] attorney who did not even pretend to have any knowledge of the facts, [and] was completely vacuous of facts," is "of no probative value, and can be disregarded" (J.C. Penney Co. v McLean Trucking Co., 42 AD2d 508, 510 [1st Dept 1973]). With these principles in mind, the court turns to the merits of defendants' motion.
In New York, a claim for legal malpractice requires proof of three elements: (1) that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession; (2) that such failure was a proximate cause of an actual and ascertainable injury to the plaintiff; and (3) that the plaintiff would have prevailed in the underlying action or would not have sustained any damages but for the attorney's negligence (see Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438, 442 [2007]; McCoy v Feinman, 99 NY2d 295, 301—302 [2002]). The Appellate Division, First Department, has emphasized that a legal malpractice plaintiff bears a heavy burden, as it must establish that "but for the attorney's negligence, [the plaintiff] would have prevailed in the underlying matter or would not have sustained ascertainable damages" (Brooks v Lewin, 21 AD3d 731, 734 [1st Dept 2005], lv denied 6 NY3d 713 [2006]). A distinctive feature of legal malpractice actions is that they impose an "additional layer" to proximate cause analysis: even if an attorney was negligent, the plaintiff must still prove that such negligence caused a less favorable outcome in the underlying matter (see Katsoris v Bodnar & Milone, LLP, 186 AD3d 1504, 1505 [2d Dept 2020]; Verdi v Jacoby & Meyers, LLP, 154 AD3d 901, 902 [2d Dept 2017]). Accordingly, a failure to establish proximate cause mandates dismissal, regardless of how egregious the alleged attorney misconduct may have been (see Rudolf, 8 NY3d at 442; Schweizer v Mulvehill, 93 F Supp 2d 376, 395 [SD NY 2000]).
Here, defendants have pointed to two independent deficiencies in plaintiff's malpractice claim: (a) lack of any breach (or actionable conduct) by the attorneys, and (b) lack of causation/damages (in light of the prior recovery and the speculative nature of plaintiff's claims). The court finds that defendants have made a prima facie showing on both points, as discussed below.
I. No Evidence of Negligent Advice by Defendants
Defendants' primary showing is that the factual premise of plaintiff's malpractice claim that Fox Horan "unconditionally advised" or helped Khenin in executing the 2009 Renewal of his CEO contract is unsupported by evidence after full discovery. Indeed, defendants have established prima facie that they neither advised nor facilitated Khenin's Renewal of his employment agreement. Oleg Rivkin submits a sworn affirmation, based on personal knowledge, unequivocally stating that Fox Horan had no involvement in or knowledge of the Renewal until [*8]months after its execution. This is corroborated by the absence of any contemporaneous communication, document, or deposition testimony linking the firm to that decision.
Plaintiff offers no admissible evidence to the contrary. The affirmation of plaintiff's counsel, made on information and belief and lacking personal knowledge, is of no probative value (JMD Holding Corp., 4 NY3d at 384-385; J.C. Penney Co., 42 AD2d at 510). Steifman himself conceded at deposition that he possessed no such evidence, testifying: "I do not have any [information]" that Rivkin advised Khenin to execute the Renewal. Steifman further conceded he had not seen any document reflecting such advice. In fact, Steifman could only speculate that because the Renewal "happened," he assumes Fox Horan must have supported it — a speculative leap he himself phrased as "de facto telling him" by acquiescence. Critically, Steifman was unable to point to any email, memo, or note to substantiate his assumption. This testimony undermines the complaint's allegation (made on "information and belief") that Fox Horan affirmatively advised Khenin to extend his contract.
Documentary discovery in this matter was extensive. To be sure, thousands of emails from the relevant time frame were produced and scrutinized. Yet plaintiff has identified nothing in those communications linking Fox Horan to the Renewal decision. Defendants have thus effectively demonstrated a total absence of evidence on a fundamental element of plaintiff's claim: that defendants breached a duty by giving wrongful advice or by facilitating an unauthorized corporate act. On summary judgment, when the movant has pointed to a lack of proof on an element where the plaintiff bears the burden, the plaintiff cannot simply rely on the pleadings or speculation; some evidentiary showing is required to create a fact issue. Here, defendants' showing that no admissible evidence supports the allegation of their involvement satisfies their initial burden of showing no breach of duty occurred.
It is also undisputed that Khenin had separate personal counsel during the relevant period, specifically an attorney named Mr. Beane, Esq.. Defendants have pointed out (and plaintiff does not refute) that Khenin's personal attorney could have advised him on matters relating to his employment and compensation. Thus, there was no necessity (and presumably no request) for Fox Horan to advise on Khenin's self-renewal. This further supports the inference that if Khenin sought legal guidance for his unilateral actions, he likely did so from his own lawyer, not the firm representing the company in litigation.
In sum, defendants have made a prima facie showing that they committed no actionable wrongdoing. An attorney cannot be negligent for failing to prevent or object to a client's unilateral act unless the attorney had a duty and opportunity to do so. Defendants' evidence suggests they were not even aware of Khenin's contract renewal until after it was a fait accompli. Absent knowledge, they could not have advised or stopped it. There is similarly no indication that Fox Horan did anything improper after learning of the Renewal (beyond advocating a legal position in Delaware, which will be discussed under causation). Thus, on the breach/negligence element of malpractice, defendants have met their burden: the evidence (or lack thereof) demonstrates that plaintiff will be unable to prove that Fox Horan breached any duty in connection with the Renewal.
In light of the aforementioned evidentiary void, defendants' showing that they did not breach any duty to plaintiff is unrebutted. Speculation or inference cannot substitute for proof. Again, the record is devoid of any document, communication, or witness testimony indicating that Fox Horan was involved in the planning or execution of the Renewal. To the contrary, all available evidence indicates Fox Horan was not involved. Relevantly, Rivkin affirms that he only learned of the executed renewal document after a petition was filed in Delaware concerning that issue. This affirmation is concrete evidence from someone with personal knowledge, and it is not contradicted by any other direct evidence in the record.
Therefore the court concludes that plaintiff cannot establish the first element of legal malpractice: a deviation from the applicable standard of care (see Rudolf, 8 NY3d at 442).
II. Collateral Estoppel and Prior Adjudication of Damages
Separately, defendants have established prima facie that plaintiff cannot recover damages in this action beyond what has already been determined and awarded in the prior Delaware Damages Action. There, following a full trial, the Court of Chancery determined that Utilisave's damages stemming from Khenin's tenure extension and related misconduct amounted to $87,124.15. This included claims for excessive salary, distributions, and litigation-related expenses.
Under the doctrine of collateral estoppel, a party is precluded from relitigating an issue that was necessarily decided in a prior proceeding where that party had a full and fair opportunity to litigate (see Buechel v Bain, 97 NY2d 295, 303-304 [2001]; Ryan v New York Tel. Co., 62 NY2d 494, 500-501 [1984]). Here, the issue of Utilisave's damages resulting from Khenin's unauthorized extension of his tenure (and related misconduct) was squarely litigated in the Delaware Damages Action. In that proceeding, Utilisave (controlled by Steifman) sought to hold Khenin liable for the financial harm caused by Khenin's breaches — specifically including the excess salary and distributions Khenin paid himself beyond 2009, and the attorney's fees and costs the company expended in the Westchester and Delaware litigations that arose from Khenin's actions. After a full trial on those claims, the Delaware Chancery Court issued a final judgment fixing the total damages at $87,124.15. That judgment necessarily decided the extent of the harm caused by the very scenario that underpins plaintiff's malpractice case (Khenin's continued management via the Renewal). The damages sought here mirror those in Delaware: plaintiff's complaint expressly alleges that it was harmed by having to pay Khenin an excessive salary, by having corporate funds diverted, and by incurring legal expenses to undo Khenin's actions. These are the same categories of damages for which Utilisave already obtained a judgment against Khenin.
Defendants have, therefore, shown that plaintiff's damages have been adjudicated and satisfied (or at least reduced to judgment) in a prior action. At a minimum, this means plaintiff cannot demonstrate any additional damages proximately caused by defendants' conduct. If the malpractice claim is essentially seeking the same compensation for the company that the Delaware court awarded (albeit from a different pocket), then plaintiff has no further loss to be recovered. New York law does not permit a double recovery for the same injury. Defendants' [*9]prima facie showing on this point is strengthened by the fact that plaintiff was "fully and fairly heard" on the issue of damages in Delaware. The Delaware trial provided plaintiff with the opportunity (indeed, the incentive) to prove all losses resulting from Khenin's misdeeds, and plaintiff succeeded to the extent of $87,124.15. Defendants argue, and the court agrees for purposes of the prima facie analysis, that plaintiff cannot now claim that its losses were greater or different than what was previously determined.
In addition, defendants point out that Fox Horan's alleged malpractice did not deprive plaintiff of any meritorious claim or defense in the underlying disputes that would translate into further recoverable damages. Unlike a typical malpractice case where, for example, an attorney's error causes a client to lose a lawsuit or miss out on damages they otherwise would have obtained, here Utilisave ultimately prevailed in holding Khenin accountable for his wrongdoing (albeit after protracted litigation). The company was made whole (through a judgment) for Khenin's misconduct. Thus, it is difficult to see a compensatory damage that remains for the malpractice claim — unless the process of getting to that result (e.g., extra legal fees, delays) is itself a damage. But those aspects were, as noted, largely within the scope of the Delaware litigation or are too speculative. Defendants have thus shifted the burden to plaintiff to identify any uncompensated, triable damages attributable to defendants.
III. No Proximate Cause
Even assuming arguendo that a breach occurred, plaintiff has not raised a triable issue on causation. A legal malpractice plaintiff must show that, but for the attorney's negligence, it would have obtained a more favorable result or avoided the claimed loss (see Rudolf, 8 NY3d at 442; Brooks, 21 AD3d at 733-734).
Defendants highlight that Khenin's independent actions were the direct cause of Utilisave's losses. By the time Fox Horan even learned of the Renewal, Khenin had already orchestrated it and begun drawing salary under it. Defendants have introduced evidence (and plaintiff does not dispute) that Khenin would not have heeded any contrary advice in any event — he was separately counseled and acting in what he perceived as his own interest. Moreover, the inter-partner feud was such that substantial legal fees were likely inevitable: Steifman and Khenin were already in court before the Renewal, and they continued to litigate various issues afterward. Defendants' position is that Fox Horan's involvement (even if one assumes some missteps) did not change the course of that conflict in a manner that increased damages to Utilisave. This position is bolstered by the outcome: the company ended up (through Steifman) recovering the financial effects of Khenin's misconduct, which suggests that the ultimate result was what it should have been, and the harm was interim. Thus, defendants have at least prima facie cast substantial doubt on the "but for" causal link between any act of theirs and any remaining loss.
In summary, defendants have satisfied their initial burden on this motion by demonstrating: (a) a lack of evidence that they breached any duty or were involved in the wrongful conduct at issue; and (b) that plaintiff cannot show any damages or loss causally attributable to defendants beyond what has already been remedied. This shifts the burden to [*10]plaintiff to produce evidence showing a triable issue of fact on each of these points.
Plaintiff's theory—that had Fox Horan acted differently, Khenin would have been ousted sooner or litigation costs would have been lower—is speculative and unsupported by evidence. The record demonstrates that the true cause of Utilisave's expenses was the longstanding internecine conflict between Steifman and Khenin. The employment renewal neither altered Khenin's legal authority as co-manager nor materially changed the litigation posture. Any suggestion that Fox Horan's actions extended or worsened the conflict lacks evidentiary support.
As such, plaintiff has failed to establish that any alleged negligence was a proximate cause of cognizable damages. Summary judgment is appropriate where the claimed losses are attributable to factors independent of the attorney's conduct (see Phillips-Smith Specialty Retail Group II, 265 AD2d at 210). That is precisely the case here.
IV. Breach of Contract (Second Cause of Action)
The breach of contract claim is duplicative of the malpractice claim, as it is premised on the same facts and seeks the same relief. Where the gravamen of a breach of contract cause of action is a failure to exercise reasonable care, it is duplicative and must be dismissed (see Sage Realty Corp. v Proskauer Rose, 251 AD2d 35, 38 [1st Dept 1998]).
Plaintiff's breach of contract claim is premised on the same allegations as the malpractice claim — essentially that defendants, by failing to represent Utilisave with due care and loyalty, breached the terms of their engagement agreement. Under New York law, where a breach of contract claim against a lawyer is based on the same facts and seeks the same relief as a malpractice claim, it is redundant and will not stand as a separate cause of action. Here, the alleged "contractual" obligations (to competently and loyally represent Utilisave) do not differ from the professional duties underpinning the malpractice claim. No specific provision of the retainer agreement is identified as having been breached other than the implied promise to render legal services consistent with professional standards. Thus, the viability of the contract claim rises or falls with the malpractice claim. Because defendants have shown prima facie entitlement to summary judgment on the malpractice claim, they likewise show entitlement to dismissal of the duplicative contract claim. In any event, no additional damages are claimed under contract theory beyond the malpractice damages, so disposing of one disposes of the other.
V. Aiding and Abetting Breach of Fiduciary Duty (Third Cause of Action)
The aiding and abetting breach of fiduciary duty claim fails for lack of evidence that defendants knowingly participated in any breach by Khenin. Advocacy on behalf of a client, even if controversial, does not constitute substantial assistance in a fiduciary breach absent proof of collusion or misconduct (see Kaufman v Cohen, 307 AD2d 113, 126 [1st Dept 2003]).
This claim alleges that defendants knowingly aided Khenin in breaching his fiduciary duties to Utilisave (for example, by helping him remain in control and extract benefits improperly). The elements of aiding and abetting a breach of fiduciary duty are: (1) a breach by [*11]a fiduciary of obligations to another, (2) knowing inducement or participation in the breach by the defendant, and (3) damages caused by the breach (Kaufman, 307 AD2d at 125). Defendants have made a prima facie case that this claim lacks merit because there is no evidence of the requisite "knowing participation" by Fox Horan. As discussed, Fox Horan did not advise the Renewal or knowingly assist any improper diversion of funds — the firm asserts it was unaware of the misconduct when it happened. Plaintiff has not identified communications or actions by Fox Horan that indicate actual knowledge that Khenin was breaching his duties (e.g., looting the company or acting ultra vires) coupled with substantial assistance by the firm. To the contrary, Fox Horan's role was to defend Utilisave (which at that time meant aligning with Khenin's litigation interests) as authorized by court order. Assisting a client in litigation, without more, is not "aiding and abetting" that client's breach of duty; otherwise, every attorney representing a faithless fiduciary would be exposed to such claims. There must be evidence the attorney colluded with the fiduciary's misconduct or enabled it through wrongful means. Defendants' submissions show an absence of such evidence here. Additionally, for many of the same reasons the malpractice claim's causation is lacking, it is hard to show that any action by defendants caused the company's damages as opposed to Khenin's own actions. Therefore, defendants have met their burden to negate the aiding and abetting claim as well.
VI. Unjust Enrichment (Fourth Cause of Action)
The unjust enrichment claim likewise fails, as it is predicated on the same conduct as the malpractice claim and arises from a relationship governed by a written engagement agreement. New York law precludes unjust enrichment claims where the parties' relationship is contractual (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]).
To prove unjust enrichment, a plaintiff must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience militate against permitting the defendant to retain what it gained (Nakamura v. Fuji, 253 AD2d 387, 390 [1st Dept 1998]). Plaintiff's unjust enrichment claim seeks return of legal fees paid to Fox Horan, on the theory that those fees were paid while Fox Horan was breaching its duties (and thus the firm should not be allowed to profit from its wrongdoing). Defendants have demonstrated that this claim is duplicative of the malpractice/fiduciary duty claims and cannot survive independently. In the Appellate Division, First Department, an unjust enrichment claim will not lie where it simply replicates a malpractice claim and the engagement was governed by a contract (the retainer) (Boesky v. Levine, 193 AD3d 403 [1st Dept 2021]). Here, the fees Fox Horan received were pursuant to a valid engagement agreement for legal services; any dispute about those fees or the services rendered is governed by contract and tort principles, not a stand-alone quasi-contract remedy. Moreover, defendants' prima facie showing that they did not engage in misconduct and provided competent representation undermines any claim that retaining their fees would be inequitable. Absent a finding of breach of duty (such as a disloyal act warranting disgorgement), there is no basis for unjust enrichment. Accordingly, defendants have shown they are entitled to summary dismissal of this cause of action as well.
In sum, the court finds that defendants have established a prima facie case for summary judgment on all causes of action. The burden thus shifts to plaintiff to come forward with [*12]evidence of specific facts sufficient to require a trial on its claims.
VII. Remaining Issues of Fact
Having concluded that defendants have satisfied their initial burden under CPLR § 3212(b), the court turns to whether plaintiff has raised any genuine issues of material fact or identified independent legal grounds precluding summary judgment. In so doing, the court examines each of plaintiff's principal contentions, beginning with the procedural doctrine of law of the case.
(1) Law of the Case and Successive Summary Judgment Motions
Plaintiff contends that the present motion is barred by the doctrine of law of the case, invoking Justice Freed's prior ruling in 2018 denying summary judgment based on unresolved factual disputes. While it is true that the law-of-the-case doctrine bars re-litigation of legal determinations previously resolved in the same action, it does not constitute an inflexible prohibition against renewed motions where new evidence has emerged or the record has evolved meaningfully (see Martin v City of Cohoes, 37 NY2d 162, 165 [1975]; Pahl Equip. Corp. v Kassis, 182 AD2d 22, 27 [1st Dept 1992], lv denied 80 NY2d 1005 [1992]). More fundamentally, a prior denial of summary judgment—particularly one grounded in the existence of triable issues—does not preclude a successive motion following discovery or in light of an expanded record (see Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957] ["the denial of a motion for summary judgment establishes nothing except that summary judgment is not warranted at that time"]; Capuano v Platzner Intl. Group, 5 AD3d 620, 621 [2d Dept 2004]).
In the case at bar, Justice Freed's prior determination in 2018 rested primarily on the insufficiency of the initial record to eliminate triable issues, including questions regarding defendants' knowledge and participation in the disputed contract renewal. That record has since been materially developed. Critically, plaintiff Michael Steifman has been deposed and admitted that he possesses no documentary or testimonial evidence demonstrating that Fox Horan advised or facilitated the Renewal. Moreover, the Delaware Court of Chancery rendered a final judgment in the damages phase of the underlying ownership litigation, quantifying Utilisave's losses at $87,124.15—a judicial finding with potential preclusive effect.
These developments constitute the sort of augmented factual record that permits the court to exercise its discretion to entertain a renewed motion for summary judgment (see CPLR § 3212[g]). It would be both procedurally proper and judicially prudent to assess the current motion in light of the full evidentiary context, especially where, as here, the interests of efficiency and finality favor resolution without the necessity of trial.
That said, the court fully respects and adheres to Justice Freed's prior determinations that remain binding. Notably, Justice Freed held that the 2007 Disqualification Order did not immunize defendants from potential liability, and that Utilisave's claims in this action were direct rather than derivative in nature. Defendants have not challenged those determinations [*13]herein, and the court proceeds on that settled foundation.
As a procedural aside, plaintiff's objection to defendants' failure to submit a Statement of Material Facts pursuant to Commercial Division Rule 19-a is noted but not dispositive. While Rule 19-a promotes clarity, the court retains discretion to excuse technical noncompliance where, as here, the voluminous record—including sworn affidavits, deposition transcripts, and detailed briefing—adequately delineates the disputed and undisputed issues (see e.g. Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]; Gonzalez v 98 Mag Leasing Corp., 95 NY2d 124, 129 [2000]). No substantial right of plaintiff has been prejudiced by the omission.
Similarly, the absence of a defense expert affidavit does not bar summary judgment. As addressed more fully below, expert testimony is not required where the determinative issues concern conduct easily understood by a lay trier of fact, or where the defense position is a categorical denial of involvement rather than a nuanced assertion of professional discretion (see Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo, 259 AD2d 282, 283 [1st Dept 1999]).
Accordingly, the court finds that law of the case does not compel denial of this motion. Rather, defendants are entitled to a full merits determination based on the substantially developed record now before the court.
(2) Collateral Estoppel and Prior Recovery
The court next considers whether plaintiff is barred, under principles of collateral estoppel, from relitigating the quantum of damages arising from Mikhail Khenin's unauthorized extension of his tenure as Chief Executive Officer of Utilisave. Defendants assert that the final judgment rendered by the Delaware Court of Chancery in 2015 conclusively resolved the issue of monetary harm suffered by the company, thereby precluding plaintiff from pursuing additional or alternative theories of recovery here.
Collateral estoppel, also known as issue preclusion, bars a party from relitigating an issue that was necessarily decided in a prior action and where that party had a full and fair opportunity to contest the issue (see Buechel v Bain, 97 NY2d 295, 303—304 [2001], cert denied 535 US 1096 [2002]; Ryan v New York Tel. Co., 62 NY2d 494, 500—501 [1984]). This doctrine applies with equal force whether the prior judgment was rendered in New York or a sister jurisdiction, provided the governing standards are met (see Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349 [1999]; see also Matter of Juan C. v Cortines, 89 NY2d 659, 667 [1997]).
Plaintiff opposes the estoppel argument on two grounds: first, that Fox Horan was not a party to the Delaware litigation; and second, that the legal theories in the two cases differ. Neither contention is availing.
New York law permits non-mutual defensive use of collateral estoppel, meaning a non-party to the earlier litigation may assert the preclusive effect of a prior judgment so long as the party to be estopped had a full and fair opportunity to litigate the identical issue (see D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]; Staatsburg Water Co. v [*14]Staatsburg Fire Dist., 72 NY2d 147, 153 [1988]). Here, plaintiff—represented by the same principal, Michael Steifman—vigorously litigated the damages caused by Khenin's conduct in the Delaware proceedings. The Delaware court, after trial, awarded Utilisave damages of $87,124.15, consisting of overcompensation, improper distributions, and related expenditures (see Utilisave, LLC v Khenin, 2015 WL 4920078, at *2—4 [Del Ch 2015]). That judgment remains final and binding.
The core question is not whether the legal labels differ—malfeasance by a manager in Delaware versus legal malpractice and breach of fiduciary duty in New York—but whether the factual issue underlying the damages is identical. That question must be answered affirmatively. The gravamen of plaintiff's claims here is that Fox Horan's alleged malpractice or disloyalty permitted Khenin to retain control over Utilisave and thereby cause harm. Yet the scope and extent of that harm were previously determined after plenary litigation. The damages plaintiff now seeks—excess compensation, diverted funds, and litigation costs incurred to "correct the wrongs"—mirror precisely those assessed and awarded in Delaware.
The Court of Appeals has emphasized that issue preclusion applies even where a plaintiff seeks to recast a resolved factual issue under a novel legal theory (see Buechel, 97 NY2d at 304 [plaintiffs cannot avoid the preclusive effect of the prior adverse determination merely by commencing a new action premised upon a different theory of recovery]). Thus, plaintiff may not circumvent the Delaware judgment by attributing the same harm to a different actor. To permit such re-litigation would invite duplicative recovery and undermine the finality of judicial determinations.
Plaintiff argues that certain damages remain unrecovered, such as fees paid to Fox Horan or other consequential losses. However, plaintiff has failed to substantiate these categories with admissible evidence or to distinguish them meaningfully from those previously adjudicated. As the Court of Appeals has noted, "the party attempting to defeat application of collateral estoppel must establish the absence of a full and fair opportunity to litigate the issue in the prior proceeding" (Kaufman v Eli Lilly & Co., 65 NY2d 449, 456 [1985]). Plaintiff has not met that burden.
The court is mindful that estoppel is not an all-encompassing defense to the entire action; it operates primarily to preclude plaintiff from recovering damages that were or could have been awarded in Delaware. Nonetheless, because plaintiff's claims also fail for independent reasons discussed herein—including the absence of evidence of attorney wrongdoing or causative impact—the estoppel doctrine provides an alternative and reinforcing ground for dismissal.
The remaining suggestion that plaintiff might recover Fox Horan's legal fees paid by Utilisave during the relevant period as an independent harm is unpersuasive. To the extent plaintiff asserts unjust enrichment or fee disgorgement, that claim is duplicative of its malpractice and fiduciary duty theories and fails for the same reasons. Moreover, where no underlying breach has been established, no basis exists to recoup legal fees paid under a valid engagement (see Kaminsky v Herrick, Feinstein LLP, 59 AD3d 1, 11—12 [1st Dept 2008]; Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker, 56 AD3d 1, 12 [1st Dept 2008]).
Accordingly, the court concludes that the issue of damages flowing from Khenin's extension of authority has already been fully litigated and resolved. Plaintiff may not obtain a second recovery under a different rubric. Any permissible recovery in this case would, in all events, be strictly limited to the amount awarded in Delaware. Since the record does not demonstrate any other category of harm, and the claims otherwise fail as a matter of law, this limitation underscores the impropriety of further proceedings. In short, plaintiff has already had its day in court regarding the harm caused by the Renewal, and it achieved a measured success; it cannot get a second bite at the apple against its attorneys to either augment that recovery or obtain a duplicate recovery.
(3) Alleged Factual Disputes Regarding Defendants' Conduct and Breach of Duty
Plaintiff contends that triable issues of fact preclude summary judgment, particularly with respect to whether defendants, Fox Horan & Camerini LLP and Oleg Rivkin, breached their professional duties to Utilisave, either by affirmatively assisting Mikhail Khenin's wrongful acts or by operating under an impermissible conflict of interest. The court has scrutinized the evidentiary record in its entirety and finds these contentions unavailing.
In assessing claims of legal malpractice or breach of fiduciary duty, it is incumbent upon the plaintiff to produce admissible evidence establishing the existence of a duty, a breach thereof, and proximate causation of an actual injury (see Rudolf, 8 NY3d at 442; see also Brooks, 21 AD3d at 734). Mere speculation or conjecture, even if articulated in earnest, cannot satisfy this burden (Zuckerman, 49 NY2d at 562).
Plaintiff offers two interrelated theories: first, that Fox Horan affirmatively enabled Khenin's unlawful conduct; and second, that the firm breached its duty of loyalty to Utilisave by prioritizing Khenin's interests over those of the corporate client. Neither theory withstands scrutiny on the evidentiary record.
With respect to the first theory, plaintiff submits no contemporaneous documentation, testimonial admissions, or communications demonstrating that Rivkin or anyone at Fox Horan advised Khenin to renew his employment or participated in its execution. To the contrary, the firm has produced sworn statements, unrebutted by admissible evidence, affirming that it was unaware of the renewal until after it occurred. Plaintiff's attempt to impute knowledge or participation based solely on the firm's litigation posture is insufficient. That a firm zealously advocates for its client's position—here, Utilisave under the de facto control of Khenin—does not, without more, constitute evidence of complicity or malpractice (see AmBase Corp. v Davis Polk & Wardwell, 8 NY3d 428, 435 [2007]).
Indeed, an attorney's obligation to advocate diligently for a client—even one mired in internal disputes—is central to the adversarial system. Courts have repeatedly held that litigation strategy, absent fraud or egregious misconduct, is not actionable in tort (see Rosner v Paley, 65 NY2d 736, 738 [1985]; Dweck Law Firm v Mann, 283 AD2d 292, 293 [1st Dept 2001]). The act of defending Khenin's continued leadership in Delaware or other fora does not ipso facto render the attorneys liable, particularly where their conduct was transparent and subject to judicial [*15]review. The legal positions advanced were adjudicated and rejected or accepted on their merits, without suggestion of attorney misconduct.
Plaintiff's second theory, predicated on alleged conflict of interest, fares no better. It is undisputed that in 2007, the Westchester Supreme Court issued an order authorizing Khenin to direct Utilisave's defense and permitting Fox Horan to serve as corporate counsel. While such a posture was fraught with risk—as any corporate representation amid internal strife would be—it was court-sanctioned and openly administered. Attorneys acting under judicial mandate are afforded a presumption of regularity, absent a showing of conduct exceeding that authorization (see People v. Ramos, 189 AD3d 586 [1st Dept 2020]).
Plaintiff identifies no instance in which Fox Horan represented Khenin personally in opposition to Utilisave. The firm's appearances were on behalf of the company as an entity, albeit under Khenin's control. Nor does plaintiff produce evidence that the firm facilitated or concealed any of Khenin's diversions of corporate funds. The mere fact that Khenin's conduct was later found to be improper does not render his counsel liable absent knowledge or participation. As courts have long held, an attorney's duty runs to the client entity—not to individual shareholders or directors—and the existence of factional disputes does not alter this duty unless the attorney affirmatively aligns with one side in a manner injurious to the corporation (see Talvy v American Red Cross in Greater NY, 205 AD2d 143, 152 [1st Dept 1994], affd 87 NY2d 826 [1995]).
The record here reflects no such alignment. There is no indication that Fox Horan concealed material facts, engaged in deceit, or otherwise acted as a faithless servant deserving of fee forfeiture or equitable sanction. Plaintiff's accusations rely on inference and assumption, not evidentiary contradiction or demonstrable misconduct.
To the extent plaintiff asserts that the firm should have disqualified itself or warned the court about internal governance issues, the court finds that contention unpersuasive. Attorneys may not unilaterally usurp judicial determinations or substitute their judgment for that of the tribunal. The 2007 Order provided a clear directive, and compliance therewith does not constitute negligence. If anything, to have refused representation under those circumstances might have prejudiced Utilisave's defense and engendered further chaos.
In sum, plaintiff has failed to raise any genuine issue of material fact concerning the existence of a breach of duty by defendants. Summary judgment is therefore appropriate on these claims.
(4) Proximate Cause and Causation Issues
Even assuming arguendo that defendants breached a cognizable legal duty, plaintiff has failed to raise a triable issue of fact as to proximate cause. It is axiomatic that in a legal malpractice action, the plaintiff must establish that the attorney's conduct was the "but for" cause of actual damages—that is, but for the alleged negligence, the plaintiff would have obtained a more favorable result (see Rudolf, 8 NY3d at 442; Heritage Partners, LLC v Stroock & Stroock [*16]& Lavan LLP, 133 AD3d 428, 428 [1st Dept 2015]).
This so-called "case within a case" doctrine imposes a rigorous standard. It requires a plaintiff to prove not only that the attorney erred, but that the error materially altered the outcome of the underlying matter (see Grace v Law, 24 NY3d 203, 208 [2014]). As the Appellate Division, First Department, has explained, speculative or hypothetical chains of causation will not suffice; a malpractice claim cannot rest on a labyrinth of conjecture (Brooks, 21 AD3d at 734).
Here, plaintiff's theory of causation is elusive. It contends that had Fox Horan withdrawn earlier, disavowed Khenin's position, or advised him differently, Utilisave might have avoided the expenses and losses associated with Khenin's extended tenure. But this assertion is speculative in the extreme.
First, plaintiff provides no evidence suggesting that Khenin would have heeded contrary advice from counsel. The record suggests otherwise: Khenin unilaterally extended his own contract and was later sanctioned for his defiance of court orders. An attorney's obligation does not extend to compelling a client's conduct, nor can a lawyer be liable for losses caused by a client's willful misconduct (see Art Capital Group, LLC v. Neuhaus, 70 AD3d 605 [1st Dept 2010]).
Second, there is no indication that a different legal posture by Fox Horan, such as seeking to withdraw or alerting the court to internal disputes, would have resulted in Khenin's earlier removal or in diminished litigation costs. On the contrary, the history of this matter suggests that disputes between Steifman and Khenin were irreconcilable and would have required judicial resolution regardless of who represented the corporate entity. The presence or absence of Fox Horan did not alter the structural deadlock or the litigation trajectory.
What specifically could Fox Horan have done that would have led to a better outcome for Utilisave? Plaintiff's theory is somewhat nebulous, but presumably: Fox Horan could have refused to go along with Khenin's ploys, perhaps informing the Westchester court that Khenin's term expired and he lacked authority, or could have moved to withdraw and thereby signal alarm, or otherwise empowered Steifman. The court will examine those hypotheticals:
If Fox Horan had told the Westchester court in early 2009, "By the way, Khenin's contract expired and we think his renewal is invalid," what would have happened? Most likely, that court would still have deferred to Delaware (as it actually did when the issue arose at trial). It is speculative to assume Justice Scheinkman would have summarily removed Khenin at that point just because Fox Horan took a different stance. Steifman did raise the issue; that is why it went to Delaware. So the same two-court ping-pong would have happened, just with Fox Horan not opposing Steifman's position. But if Fox Horan had taken Steifman's side, effectively, then Fox Horan would have been violating the 2007 Order and breaching its duty to the client (company via Khenin). It is an untenable position for counsel: they cannot serve two masters, and the court told them which master to heed. So faulting them for not betraying Khenin's wishes is problematic. More to the causation point, even if they had done so, Khenin would have gotten [*17]another lawyer for the company or for himself, and the fight would continue. The underlying dynamic (50/50 owners in deadlock, one trying to oust the other) is not something a change of lawyer solves.
If Fox Horan had withdrawn in protest upon learning of the Renewal, would that have saved Utilisave money or losses? Likely not. Khenin would have hired new litigation counsel (perhaps equally expensive or more so), the litigation would continue, and the company would incur similar or greater fees. Withdrawal might have delayed proceedings briefly but not changed outcomes — if anything, a new lawyer might have tried similar or more aggressive tactics. There is no reason to believe Utilisave (under Khenin's control) would suddenly capitulate to Steifman's demands if Fox Horan left. So proximate cause in the sense of reducing fees or getting Khenin out sooner is not evident.
If Fox Horan had, upon learning of the Renewal, advised Khenin to retract it or at least not to insist on staying on — would he have listened? The nature of their relationship (and Khenin's later sanction for misconduct) suggests he was not inclined to follow advice contrary to his personal interest. Khenin was fighting for his position; it is doubtful any advice from Fox Horan to step aside would have been heeded. So the causation chain is broken by Khenin's willful behavior. New York law holds that an attorney cannot be the proximate cause of a loss if the client (or here the principal's) independent actions (especially illegal or bad-faith ones) produced the loss (Ulico Cas. Co., 56 AD3d 1; Humbert v. Mizrahi, 166 AD3d 426 [1st Dept 2018]).
Another way to see it: the harm to Utilisave was that Khenin stayed CEO from 2009 to 2011 and paid himself salary and caused the company to incur legal fees to remove him. Suppose counter-factually that Fox Horan had not been involved at all — say the court had disqualified any counsel and appointed a receiver or something in 2007 (not that it happened, but imagine). Would Utilisave have avoided those losses? Unlikely — Khenin still would have tried to hold on, maybe more crudely, Steifman still would have had to sue or petition Delaware, etc. The costs might have been just as high or higher because a receiver would use corporate funds too. There is no scenario apparent where, but for Fox Horan's presence, peace or savings would have broken out. The feud was going to cost money to resolve no matter what.
Plaintiff did ultimately have to expend legal fees in Delaware to get Khenin out and to recover funds. Those fees are the type of consequential damages one can sometimes recover in malpractice if, for example, the attorney's negligence forces the client into additional litigation. But here, the Delaware litigation was necessitated by Khenin's intransigence, not by Fox Horan's negligence. Utilisave would have had to pursue Khenin for those excess payments whether or not Fox Horan was involved. In fact, one could argue Fox Horan's representation ended in 2011, and then Steifman had to do the Delaware damages case (2015) — Fox Horan was not representing anyone in that, yet the fees were incurred because Khenin would not voluntarily repay or concede wrongdoing. That is on Khenin, not Fox Horan.
Moreover, courts have consistently rejected malpractice claims where the client's harm stems not from the attorney's conduct but from independent causes, such as business disputes, [*18]third-party actions, or the client's own choices (see Phillips-Smith Specialty Retail Group II, L.P., 265 AD2d at 210; Dweck Law Firm, 283 AD2d at 293).
Here, the losses plaintiff attributes to defendants—the continuation of Khenin's control, excessive compensation, and litigation costs—are causally connected to Khenin's actions, not defendants' representation. To suggest that had Fox Horan disassociated from the case, the internal conflict would have abated, borders on fiction. Indeed, one could analogize the situation to a ship captained by two feuding co-owners: the ship's course may be perilous, but changing the navigator will not quell the mutiny. The damage arises from the conflict at the helm, not from the charting of the voyage.
Finally, plaintiff has not submitted any expert affidavit or other competent evidence tracing a causal link between any specific act or omission by Fox Horan and a legally cognizable loss. While expert testimony is not invariably required, in cases involving complex legal causation it is often essential to bridge the analytical gap (see Bells v Foster, 83 AD3d 876, 877 [2d Dept 2011]; Estate of Nevelson, 259 AD2d at 283). Its absence here is telling.
In sum, plaintiff's theory of proximate cause is based on conjecture and fails to present the necessary evidentiary foundation. The record demonstrates that Khenin's misconduct, not any action or inaction by defendants, was the proximate cause of Utilisave's alleged harm. Summary judgment is therefore appropriate on this ground as well.
(5) Expert Testimony and Procedural Objections
Plaintiff further contends that defendants' motion must be denied because defendants did not submit an expert affidavit addressing the applicable standard of care or refuting plaintiff's theory of legal malpractice. That argument is unavailing.
It is true that expert testimony is often required in legal malpractice actions, particularly where the alleged negligence involves strategic judgment, specialized areas of law, or matters beyond the ordinary understanding of a court or jury. There is, however, no inflexible rule mandating expert proof in every malpractice case. Where the dispositive issues are within the competence of the court to assess, or where the claim turns on straightforward factual questions rather than professional judgment, the absence of expert testimony does not preclude summary judgment (see Estate of Nevelson, 259 AD2d at 283; Dweck Law Firm, 283 AD2d at 293).
Here, plaintiff's malpractice theory does not hinge on the quality of defendants' legal strategy or the exercise of professional discretion in a complex legal setting. Instead, it rests on the threshold allegation that defendants advised, facilitated, or knowingly acquiesced in the Renewal of Khenin's employment agreement, or failed to withdraw or disclose wrongdoing in the face of an alleged conflict of interest. Whether defendants gave such advice, knew of the Renewal when it occurred, or participated in any wrongdoing are factual determinations, not matters requiring expert interpretation. Likewise, whether an attorney should disclose a client's misconduct or withdraw under circumstances governed by an express court order is a legal and ethical question that the court is fully equipped to assess by reference to governing rules, [*19]precedent, and common sense, without the aid of expert opinion.
Moreover, defendants' central position on this motion is that they did not participate in the alleged misconduct at all and gave no advice regarding the challenged renewal. Where the alleged negligent act is affirmatively denied and the record contains no evidence that it occurred, expert testimony concerning the standard of care is beside the point. An expert cannot supply proof that an act occurred where the evidentiary record demonstrates it did not. As the Appellate Division, First Department, has recognized, expert opinion cannot substitute for proof of a foundational fact essential to liability (see Estate of Nevelson, 259 AD2d at 283).
Significantly, to the extent expert testimony would be relevant at all, it would be plaintiff who bears the burden of producing such proof to establish a departure from accepted professional standards. Plaintiff has submitted no expert affidavit opining that defendants' conduct fell below the standard of care for corporate counsel in a closely held company dispute, or that defendants were required, under the circumstances presented, to act differently than they did. The absence of such proof further underscores the speculative nature of plaintiff's claims.
Plaintiff's remaining procedural objection based on defendants' failure to submit a Statement of Undisputed Material Facts pursuant to Commercial Division Rule 19-a likewise does not warrant denial of the motion. Rule 19-a is not jurisdictional, and courts retain discretion to excuse noncompliance where the record is otherwise comprehensive and no prejudice is shown (see Kocourek v Booz Allen Hamilton Inc., 85 AD3d 502, 503 [1st Dept 2011]). Here, the parties' submissions are voluminous and detailed, including affidavits, deposition testimony, and documentary exhibits that clearly frame the factual issues. Plaintiff has demonstrated full awareness of defendants' factual positions and has responded to them substantively. Under these circumstances, elevating form over substance would serve no useful purpose.
Consequently, neither the absence of a defense expert affidavit nor any procedural irregularity provides a basis to deny summary judgment.
In sum, plaintiff's opposition has not demonstrated any genuine issue requiring a trial. The shadow of suspicion cast by plaintiff on Fox Horan's dual role is not enough to overcome the stark absence of evidence of actual attorney wrongdoing or causative impact. As Justice Freed observed previously, "an order denying summary judgment only decides that a question of fact exists"; once discovery closes, if the facts remain one-sided, summary judgment may be granted. Here, after exhaustive discovery, plaintiff's claims remain speculative and unsupported, while defendants' evidence is largely unchallenged by anything other than conjecture.
Viewing the record in the light most favorable to plaintiff, the court finds no triable issues of fact as to defendants' alleged malpractice, breach of fiduciary duty, or unjust enrichment. Defendants have demonstrated their entitlement to judgment as a matter of law, and plaintiff has failed to produce evidence that would permit a rational fact-finder to find in its favor on any of the causes of action. Plaintiff essentially asks the court to infer attorney wrongdoing and causation from the unfortunate events that transpired, but inference cannot rest on conjecture alone, and prior proceedings have already resolved the core issues of loss in this [*20]saga.
For the foregoing reasons, defendants have demonstrated their entitlement to judgment as a matter of law, and Plaintiff has failed to raise any triable issue of fact.
Accordingly, it is hereby
ORDERED that defendants' motion for summary judgment dismissing the complaint is granted in its entirety; and it is further
ORDERED that the complaint is dismissed with prejudice as against all defendants; and it is further
ORDERED that defendants shall serve a copy of this decision and order, with notice of entry, upon plaintiff and the Clerk of the Court in accordance with the applicable rules of this court; and it is further
ORDERED that the Clerk of the Court enter judgment accordingly in favor of defendants, with costs and disbursements as taxed by the Clerk upon submission of an appropriate bill of costs.
This constitutes the decision and order of the court.
DATE 01/20/2026HASA A. KINGO, J.S.C.